2001-NMSC-004

19 P.3d 254

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Darcy SMITH, Defendant–Appellant.**

**No. 25,106.**

Supreme Court of New Mexico.

Jan. 23, 2001.

Michener Law Firm, L.L.C., Roger E. Michener, Placitas, NM, for Appellant.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

FRANCHINI, Justice.

{1} In March 1998, Defendant Darcy Smith was convicted of first degree felony murder in violation of NMSA 1978, § 30–2–1(A)(2) (1980, prior to 1994 amendment) and false imprisonment in violation of NMSA 1978, § 30–4–3 (1963). She was sentenced to life imprisonment for the murder and to eighteen months for false imprisonment with the sentences to be served consecutively. We review this case on direct appeal under Rule 12–102(A)(1) NMRA 2001. On appeal, Defendant raises the following challenges to the convictions: (1) there was insufficient evidence to convict her of either felony murder or false imprisonment; (2) the trial court erred in admitting certain evidence, in restricting Defendant's cross-examination of two witnesses, and in refusing two of her proposed jury instructions; and (3) the prosecutor improperly commented on Defendant's right to silence and character. We affirm Defendant's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} On the morning of November 24, 1992, the body of the seventeen-year-old murder victim was discovered in a remote area near Bernardo, New Mexico, in Socorro County. The state police were able to establish his identity from a gift certificate found on the body which had been given to him by his grandparents for his birthday on November 23. The crime remained unsolved until late 1993, when the New Mexico State Police arranged for a Crime Stoppers television program about the murder. Several weeks after the broadcast, Defendant's friend, Jennifer Jones, contacted Michael Davies, who was in charge of the state police investigation. Ms. Jones provided information impli-

cating Defendant, Eric Smith (Smith), and Mark Apodaca (Apodaca) in the murder of the victim. At the time of the murder, Smith and Apodaca had been good friends for some time, and Apodaca was married to Defendant's sister. Defendant and Smith had married in June 1993 and shortly after their marriage, began a house sharing arrangement with the Jones couple which continued until Defendant and Smith were arrested in December 1993.

{3} Apodaca was arrested first and gave a voluntary statement about the killing. Defendant and Smith were subsequently arrested and charged in the victim's death. In a separate trial, Smith was convicted of felony murder, false imprisonment, aggravated assault, conspiracy, tampering with evidence, and contributing to the delinquency of a minor. Apodaca pleaded guilty to second degree murder and related crimes in a plea agreement. As part of that agreement, Apodaca agreed to testify truthfully about Defendant's participation in the victim's death. Defendant, who was seventeen years old at the time of the murder, was charged initially in children's court. *See In re Darcy S.*, 1997–NMCA–026, ¶ 1, 123 N.M. 206, 936 P.2d 888. In January 1994, the State filed a motion to transfer Defendant to district court to be tried as an adult. *Id.* ¶ 2. After an evidentiary hearing on the motion, the children's court transferred Defendant to district court for trial as an adult. *Id.* ¶ 3. Defendant subsequently filed an appeal with the Court of Appeals contesting the transfer decision and raising claims of due process and speedy trial violations *Id.* ¶ 1. The Court of Appeals affirmed the trial court's actions. *Id.* ¶ 36.

{4} At trial, Apodaca testified about the events on the night of the murder. Ms. Jones, and her estranged husband, Brian Jones, also testified about Defendant's later admissions regarding that evening's events. Apodaca stated that he, Smith, and Defendant had spent the evening drinking and then decided to go out and shoot rabbits. Each was armed with a weapon: Smith with a .44 caliber revolver, Defendant with a 9 millimeter handgun in a holster on her right hip, and Apodaca with a 12 gauge shotgun. Apodaca testified that they had gone shoot-

ing before and Defendant was proficient in the use of various weapons, including the type of handgun she had with her that night.

{5} At some point, the three of them decided to pick someone up at random to "scare the hell" out of that person. In an area near the University of New Mexico in Albuquerque, they spotted the victim. Smith forced him into the backseat of his two-door car at gunpoint, and they all drove off. Apodaca said that, as they were driving, Smith became angry with the victim. He asked Apodaca to steady the steering wheel so that Smith could turn around in the driver's seat to hit the victim in the face with the butt of his .44 revolver. While Apodaca steered the car during the beating, Defendant put her foot on the gas pedal to maintain the car's speed. Smith left Interstate 25 at the Bernardo exit and drove a short distance from the exit. After he stopped the car, Smith took the victim out of the car and had him stand at the back of the car where Defendant and Apodaca joined them. After further angry words, Smith began to beat the victim and then shot him twice with the .44 revolver. After the victim fell to the ground, Defendant then shot him twice with her 9 millimeter handgun. Apodaca testified that after she shot the victim, Defendant picked up one of the spent casings from her gun as a souvenir. Smith next retrieved the shotgun from the car, and he and Apodaca each shot the victim three more times. Afterward Defendant, Smith, and Apodaca got back in the car and left the victim there. Apodaca described Defendant as being excited about the shooting and "hyped" during the ride back to Albuquerque.

{6} At trial, Dr. Ross Zumwalt, chief medical investigator for the Office of the Medical Investigator, testified as an expert in forensic pathology about the autopsy of the victim. The autopsy revealed that the victim had been shot ten times and had bled to death from his wounds, although given the extent and severity of his injuries, it was unlikely that he could have survived. The victim also had numerous injuries to the face including bruises and lacerations caused by a blunt object. Dr. Zumwalt testified that the injuries were consistent with being struck by

the butt of a revolver. Additional bruising found on the victim's forearms and the back of his hand also was caused by a blunt object. These bruises were described as defensive injuries which can occur when a person raises his or her arms or hands as protection from blows. The supervisor of the firearms identification section at the Department of Public Safety's Crime Lab testified as an expert witness. He described the testing process he used on the bullets and shotgun pellets retrieved from the victim's body during the autopsy and those found at the scene. He testified that weapons involved in the murder had been a 12 gauge shotgun, a .44 caliber revolver, and a 9 millimeter weapon.

## II. SUFFICIENCY OF THE EVIDENCE

{7} Defendant contends that the evidence presented at trial was insufficient to support either her conviction for false imprisonment or for felony murder. We review the sufficiency of the evidence under a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Garcia*, 114 N.M. 269, 274, 837 P.2d 862, 867 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 317–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In evaluating the sufficiency of evidence in a criminal case, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. In making this determination, the Court does not substitute its judgment for that of the factfinder, nor does it reweigh the evidence. *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). The evidence presented in this case supports the convictions for false imprisonment and felony murder.

### A. False Imprisonment

{8} Defendant was charged as both a principal and an accessory to the crime of false imprisonment. *See* Section 30–4–3; NMSA 1978, § 30–1–13 (1972). To convict Defendant of false imprisonment, the State had to prove the following beyond a reasonable doubt:

1. The defendant confined [the victim] against his will;

2. The defendant knew she had no authority to confine [the victim][.]

*See* UJI 14–401 NMRA 2001. The jury was also given the following instruction on accessory liability:

The defendant may be found guilty of a crime even though she herself did not do the acts constituting the crime, if the state proves to your satisfaction beyond a reasonable doubt that:

1. The defendant intended that the crime be committed;

2. The crime was committed;

3. The defendant helped, encouraged or caused the crime to be committed[.]

This instruction does not apply to the charge of felony murder.

*See* UJI 14–2822 NMRA 2001.

{9} The State presented evidence about the events of that night through the testimony of the eyewitness, Apodaca, and that of Jennifer and Brian Jones, who testified about Defendant's separate admissions to each of them about the victim's death. The jury heard testimony that (1) Defendant was armed; (2) she decided, along with Smith and Apodaca, to snatch a stranger off the street; (3) the victim was forced into the back of a two-door car from which he could not get out except through the driver door or the passenger side door; and (4) as they drove from Albuquerque to Bernardo, Defendant pressed her foot on the gas pedal to keep the car on course while the driver turned around to beat the victim with the butt of his weapon.

{10} We conclude that there was sufficient evidence to support the jury's verdict. A rational jury could reasonably have determined that Defendant either confined the victim against his will without authority to do so, or helped or encouraged that to happen. *See State v. Muise*, 103 N.M. 382, 388, 707

P.2d 1192, 1198 (Ct.App.1985) ("The restraint constituting false imprisonment may arise out of words, acts, gestures or similar means which result in a reasonable fear of personal difficulty or personal injuries if the victim does not submit.").

### B. Felony Murder

{11} Defendant's claim that her felony murder conviction is not supported by substantial evidence has two parts. As we understand Defendant's argument, she contends that there was insufficient evidence to support her conviction because there was no underlying felony inherently dangerous to life due to the fact that false imprisonment is a fourth degree felony. She argues that there was insufficient evidence of false imprisonment for it to have served as the underlying felony. Because we have already determined that the false imprisonment conviction was supported by substantial evidence, this part of Defendant's claim is resolved.

 {12} "[T]he killing of one human being by another without lawful justification or excuse ... in the commission of or attempt to commit any felony" is first degree murder. Section 30–2–1(A)(2). In New Mexico, the underlying felony must be a first degree felony, an inherently dangerous lesser degree felony, or a lesser degree felony committed under inherently dangerous circumstances. *State v. Harrison,* 90 N.M. 439, 442, 564 P.2d 1321, 1324 (1977) "[B]oth the nature of the felony and the circumstances surrounding its commission may be considered to determine whether it was inherently dangerous to human life." *Id.* This is a factual matter "for the jury to decide in each case, subject to review by the appellate courts." *Id.*

{13} Defendant was charged with felony murder as a principal and as an accessory. The jury was instructed that to find Defendant guilty of felony murder, the State was required to prove beyond a reasonable doubt that:

1. The defendant, Darcy Smith, committed the crime of false imprisonment, under circumstances or in a manner dangerous to human life;

2. Darcy Smith caused the death of [the victim] during the commission of false imprisonment;

3. Darcy Smith intended to kill or knew that her acts created a strong probability of death or great bodily harm[.]

*See* UJI 14–202 NMRA 2001. To convict Defendant as an accessory to felony murder, the State had to prove the following beyond a reasonable doubt:

1. The felony of false imprisonment was committed under circumstances or in a manner dangerous to human life;

2. The defendant Darcy Smith helped, encouraged or caused the felony of false imprisonment to be committed;

3. The defendant Darcy Smith intended that the false imprisonment be committed;

4. During the commission of the felony [the victim] was killed;

5. The defendant Darcy Smith helped, encouraged, or caused the killing to be committed;

6. The defendant Darcy Smith intended the killing to occur or knew that she was helping to create a strong probability of death or great bodily harm[.]

*See* UJI 14–2821 NMRA 2001.

 {14} False imprisonment is a fourth degree felony, so in order for it to serve as the predicate felony for felony murder, the State would have to prove that it was committed in circumstances that were inherently dangerous to human life. *See Harrison,* 90 N.M. at 442, 564 P.2d at 1324. The evidence presented at trial showed that the victim was forced into the back of a two-door car at gunpoint and was beaten with a gun as he was driven to an isolated location. Defendant, Smith, and Apodaca were armed and had been drinking throughout the evening. Based on this evidence, a rational jury could have found that Defendant committed the crime of false imprisonment "under circumstances or in a manner dangerous to human life." *See* UJI 14–202.

 {15} Defendant's second claim is that no causal connection was established between the victim's death and her acts.

This claim is without merit. In *Harrison*, this Court defined causation in the context of felony murder as "those acts of defendant or his accomplice initiating and leading to the homicide without an independent force intervening." 90 N.M. at 441–42, 564 P.2d at 1323–24 (footnote omitted). The testimony was sufficient to establish a causal connection between the false imprisonment and the murder and that Defendant's acts initiated and led to the victim's · death. *See State v. McGruder*, 1997 NMSC 023, ¶ 19, 123 N.M. 302, 940 P.2d 150 ("The State proved a nexus between those two felonies and the murder that excluded the possibility the murder was not committed in the commission of a felony."). Moreover, the jury was instructed on accessory liability for felony murder. The jury could have found Defendant guilty of felony murder if they determined that she "helped, encouraged, or caused the killing to be committed." *See* UJI 14–2821.

{16} Defendant also appears to argue that there was insufficient evidence because the testimony of Apodaca was suspect. However, in New Mexico, it is the factfinder that determines credibility. *See State v. Varela*, 1999–NMSC–045, ¶ 47, 128 N.M. 454, 993 P.2d 1280. Further, Apodaca's testimony was corroborated by that of Jennifer and Brian Jones and also supported by the physical evidence as testified to by the chief medical investigator and the expert witness on firearms.

## III. TRIAL ERROR

### A. Admission of Evidence

{17} Defendant objects to the admission of Brian Jones's testimony concerning the statements she made to him about her participation in the murder while he and Jennifer Jones shared a house with Defendant and Smith. Defendant asserts that the State improperly elicited statements that were made to him by Smith, not by Defendant. She argues that these statements were hearsay and their admission violated the Sixth Amendment Confrontation Clause. The admission of evidence is a matter within the discretion of the trial court which we will affirm absent a clear abuse of discretion. *State v. Worley*, 100 N.M. 720,

723, 676 P.2d 247, 250 (1984). A hearsay statement is an out-of-court oral or written assertion offered to prove the truth of the matter asserted therein, Rule 11–801(A), (C) NMRA 2001, and is inadmissible absent an exception under the rules of evidence, Rule 11–802 NMRA 2001. Under the New Mexico Rules of Evidence, however, a statement is not hearsay when it is offered against a party and is the party's own statement. Rule 11–801(D)(2)(a).

{18} Defendant does not direct us to any specific testimony by Mr. Jones upon which she bases her claim, and we find no support in the record. As Mr. Jones testified about the numerous conversations he had with Defendant and Smith about the victim's death, the prosecutor repeatedly directed Mr. Jones to describe only the statements made by Defendant. At Defendant's request, the trial court cautioned the jury during the direct examination that any testimony about statements by Smith, not made in the presence of Defendant, were not to be considered as evidence. During cross-examination, defense counsel also clarified with Mr. Jones that the statements had been made by Defendant. We conclude that the testimony involved Defendant's own statements and that they were properly admitted under Rule 11–801(D)(2)(a) by the trial court. Because the challenged testimony was not hearsay, the Defendant's right of confrontation under the Sixth Amendment was not violated. *Cf. State v. Castillo–Sanchez*, 1999 NMCA 085, ¶ 23, 127 N.M. 540, 984 P.2d 787, *cert. denied*, 127 N.M. 390, 981 P.2d 1208 (1999) ("As for Defendant's confrontation-clause argument, he fails to suggest how the State's use of his own admissions could violate his right to confront the witnesses against him.").

### B. Cross–Examination of Witnesses

{19} Defendant asserts that the trial court improperly limited the cross-examination of two witnesses, Carlos Maldonado and Brian Jones, and that this action violated her Sixth Amendment right of confrontation. Although the extent of cross-examination is a matter within the discretion of the trial court, we review de novo the question of whether the Confrontation Clause

has been violated. *State v. Gonzales,* 1999–NMSC–033, ¶ 22, 128 N.M. 44, 989 P.2d 419. As we observed in that opinion, the trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (quoted authority and quotation marks omitted); *see also* Rule 11–611(A) NMRA 2001 (describing the court's discretion in controlling the order of witnesses, mode of interrogating witnesses, and presentation of evidence). Only when cross-examination is unduly restricted does constitutional error result. *State v. Martinez,* 1996–NMCA–109, ¶ 14, 122 N.M. 476, 927 P.2d 31. We are not persuaded that the trial court abused its discretion or that Defendant's right of confrontation was violated.

{20} In November 1992, Carlos Maldonado was assigned to criminal investigations with the New Mexico State Police and, in that capacity, investigated the crime scene where the victim's body was found. At the end of cross-examination, Defendant asked Captain Maldonado two questions about the search at the scene for any buried projectiles from the bullets that had been fired. The prosecutor objected to each question, because Captain Maldonado was not involved in that part of the crime scene investigation. The objections were sustained by the trial court. Two later witnesses did testify about the bullets found at the crime scene. An investigator for the prosecutor's office described how she conducted the search and retrieval of the bullets at the crime scene, and an analyst with the Department of Public Safety's Crime Lab testified as an expert witness about those projectiles.

{21} On appeal, Defendant has not shown what evidence she hoped to elicit with the questions to Captain Maldonado, how it would have been relevant, or how her right of confrontation was violated. *See In re Ernesto M.,* 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). We determine that the trial court did not abuse its discretion in confining Captain Maldonado's testimony to his personal knowledge. *See* Rule 11–602 NMRA 2001 (requiring a witness to have personal knowledge of a matter to testify). Further there was no violation of the Confrontation Clause because Defendant had an opportunity to cross-examine the two witnesses who had direct involvement in the recovery and testing of the buried projectiles.

{22} Defendant asserts that on two occasions the trial court improperly restricted the cross-examination of Brian Jones about his drinking habits during that time period and about whether Smith had abused Defendant. In the first instance, after a question about Mr. Jones's drinking habits, the prosecutor approached the bench on a matter of courtroom procedure, not to object to the questioning. The judge instructed defense counsel, and the cross-examination resumed. Shortly thereafter, Defendant asked the same question of Mr. Jones which was answered without objection. Moreover, our review of the record shows that Mr. Jones was questioned extensively on direct and cross-examination about his former drinking habits and whether his memory of events had been affected.

{23} Later in the cross-examination, Defendant raised a question about whether Mr. Jones had witnessed Smith abusing Defendant. The prosecutor objected on the grounds that the question exceeded the scope of direct examination and was sustained on that basis. *See* Rule 11–611(B) (limiting cross-examination to the subject matter of the direct examination). Again Defendant has not informed this Court what the testimony might have been and how it would have been relevant to the murder of the victim. As we understand Defendant's argument, she contends that if cross-examination had not been restricted, it "might have shown more clearly the truth of her position" and provided information to impeach Apodaca. This speculation is offered without citation to the record or to authority. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellant must submit both argument and authority in support of issues to present an

argument for appellate review). In any event, the trial court has broad discretion to control the scope of cross-examination. *State v. Martin,* 101 N.M. 595, 601, 686 P.2d 937, 943 (1984); *State v. Mireles,* 84 N.M. 146, 149, 500 P.2d 431, 434 (Ct.App.1972). Defendant's right of confrontation is not violated by restricting cross-examination to the facts and circumstances implicated by direct examination and to matters relating to the credibility of the witness. *See People v. Terrell,* 185 Ill.2d 467, 236 Ill.Dec. 723, 708 N.E.2d 309, 324–25 (1998). We conclude that the trial court did not abuse its discretion in determining that Defendant's question exceeded the permissible scope of cross-examination under Rule 11–611(B). *Cf. Mireles,* 84 N.M. at 149, 500 P.2d at 434.

{24} We conclude that there was no abuse of discretion on the part of the trial court and no violation of the Confrontation Clause. *Cf. State v. Herrera,* 92 N.M. 7, 16, 582 P.2d 384, 393 (Ct.App.1978) ("Defendant has no constitutional right to ask a witness questions which are irrelevant.").The trial court's limitation on Defendant's cross-examination of Captain Maldonado and Mr. Jones was proper. See *State v. Sanders,* 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) ("The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness 'in whatever way, and to whatever extent, the defense might wish.' ") (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam)).

## C. Jury Instruction on Accomplice Testimony

{25} Defendant claims that the trial court also erred in not giving a requested instruction on accomplice testimony. Defendant asserts that under the circumstances of this case, it was reversible error for the trial court to have refused the requested instruction because the credibility of Apodaca's testimony was suspect. She had wanted to have the jury directed to "view the testimony of the accomplice [Apodaca] with suspicion and receive it with caution."

{26} The language of Defendant's tendered instruction comes from UJI 14–5015 NMRA 2001. However, the use note for that instruction states that no instruction on the subject shall be given. In addition, the General Use Note to Uniform Jury Instructions Criminal NMRA 2001 also prohibits the use of this type of instruction: "In no event may an elements instruction be altered or an instruction given on a subject which a use note directs that no instruction be given." The trial court refused the instruction on accomplice liability on that basis, stating that he was bound by the uniform jury instructions.

{27} In two recent cases, this Court has rejected precisely the same argument after careful review. *See State v. Brown,* 1998–NMSC–037, ¶¶ 70–73, 126 N.M. 338, 969 P.2d 313; *State v. Sarracino,* 1998–NMSC–022, ¶¶ 9–19, 125 N.M. 511, 964 P.2d 72. Defendant does not persuade us to change our long-standing practice. *See State v. Ortega,* 112 N.M. 554, 575, 817 P.2d 1196, 1217 (1991) (rejecting the defendant's request for additional instructions on witness credibility and holding that the question was already covered by UJI 14–5020); *State v. Smith,* 88 N.M. 541, 546–47, 543 P.2d 834, 838–40 (Ct. App.1975) (observing that the requested instruction contradicted the general uniform jury instruction on credibility and holding that special instructions were not required for different categories of witnesses, the special instructions were of doubtful validity, and the general credibility instruction sufficiently instructed the jury.); Rule 11–107 NMRA 2001 ("The court shall not comment to the jury upon the evidence or the credibility of the witnesses.").

{28} The trial court covered the question of witness credibility when it instructed the jury on their duty to assess the credibility of the witnesses:

You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them. In determining the credit to be given any witness, you should take into account his truthfulness or untruthfulness, his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have and the

reasonableness of his testimony considered in the light of all evidence in the case. UJI 14–5020 NMRA 2001. We hold that the trial court did not err when it followed the order of this Court and New Mexico case law and refused the additional instruction on witness credibility. *See State v. Smith*, 92 N.M. 533, 541, 591 P.2d 664, 672 (1979) (observing that the trial court must follow the directions of the Supreme Court regarding uniform jury instructions); *State v. Curlee*, 98 N.M. 576, 578, 651 P.2d 111, 113 (Ct.App.1982) ("Inferior courts are bound to follow the directives of the Supreme Court regarding the uniform instructions.").

{29} Additionally, our review of the record shows that the jury had sufficient information to assess the credibility of Apodaca and his motive for testifying. Defendant consistently challenged Apodaca's credibility, cross-examined him in detail on the inconsistencies in his multiple statements and about the plea agreement, and, in closing argument, continued to attack Apodaca's testimony as not being credible.

### D. Jury Instruction on Mere Presence

{30} Defendant argues that the trial court erred when it refused her tendered jury instruction on "mere presence" at a crime. She had wanted the jury to be instructed that "merely being present at the scene of a crime" would not have been sufficient to convict her, but rather that the State must prove that Defendant was "a participant-someone who wanted the crime to be committed." The uniform jury instructions contain an instruction on mere presence at UJI 14–2823 NMRA 2001, and again the corresponding use note for that instruction states that no instruction on mere presence shall be given. In refusing the proffered instruction, the trial court noted that this Court has not included the instruction in the uniform jury instructions. As discussed above, the trial court did not err when it followed the mandate of this Court and refused the tendered instruction.

{31} In addition, the committee commentary to UJI 14–2823 observes that this kind of instruction is not necessary because "the subject is covered in the essential elements instruction." The trial court properly instructed the jury on the essential elements of the crimes of felony murder and false imprisonment, and the jury was also told that "[t]he burden is always on the state to prove guilt beyond a reasonable doubt." UJI 14–5060 NMRA 2001. To meet that burden, the State was required to prove every element of the charges of felony murder and false imprisonment beyond a reasonable doubt. This requirement would have prevented the jury from finding Defendant guilty of these crimes based on her mere presence at the crime scene. *Cf. State v. Stettheimer*, 94 N.M. 149, 154, 607 P.2d 1167, 1172 (Ct.App. 1980) (stating that when a defendant requests an instruction that "is already covered by the trial court's instruction, it is not error to refuse the instruction").

### E. Comments by the Prosecutor

{32} Defendant asserts that the prosecutor impermissibly referred to her postarrest silence and commented upon her character. She argues that it was error for the trial court to deny her motion for a mistrial. The denial of a motion for mistrial is reviewed for abuse of discretion. *State v. Foster*, 1998–NMCA–163, ¶ 24, 126 N.M. 177, 967 P.2d 852. We rely upon the judgment of the trial court because "[t]he trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision." *Sutphin*, 107 N.M. at 130, 753 P.2d at 1318 (quotation marks and quoted authority omitted). As we observed in *Sutphin*, "[t]he power to declare a mistrial should be exercised with the greatest caution." *Id.* "Evidence of a defendant's postarrest silence is generally inadmissible because the probative value of the silence is substantially outweighed by the potential for unfair prejudice." *State v. Garcia*, 118 N.M. 773, 776, 887 P.2d 767, 770 (Ct.App.1994).

{33} Defendant does not cite to the record for any instances of a comment upon character, so we address only the claim about two comments made by the prosecutor which allegedly were comments on the right to silence. *See State v. Foster*, 1999–NMSC–

007, ¶ 47, 126 N.M. 646, 974 P.2d 140 (discussing preservation); Rule 12–213(A)(4) NMRA 2001 (requiring appellant to explain how issue was preserved with citations to record proper or transcript of proceedings).

{34} During the prosecutor's direct examination of the officer in charge of the investigations, she asked several questions about Apodaca's arrest and the voluntary statement he had given. She then asked about the officer's role in the arrest of the other two suspects, Smith and Defendant. During that line of questioning, the prosecutor asked if he had taken a statement from either of them. Before the officer could respond, the prosecutor said, "Strike that." Defendant also objected before any response could be made by the officer.

{35} Defendant then moved for a mistrial, and argument was heard by the trial court outside the jury's presence. Defendant argued that the prosecutor was attempting to elicit whether Defendant had invoked her Fifth Amendment rights when she was arrested and to contrast Defendant's silence with Apodaca's having given a voluntary statement. In response, the prosecutor apologized for the question and explained that she realized that, as soon as she asked the question, it was a mistake and so had acted to withdraw it. The trial court accepted this explanation and denied Defendant's motion, finding that the initial questions about Apodaca's statement were not error and concluding that the single unanswered question did not give rise to adequate grounds for granting a mistrial. The court offered to give a curative instruction; Defendant declined the offer. *Cf. State v. Gibson,* 113 N.M. 547, 556, 828 P.2d 980, 989 (Ct.App.1992) ("Failure to accept the court's offer of a cautionary instruction may in itself justify a refusal to grant a mistrial . . . .").

{36} We hold that there was no violation of Defendant's right to silence when the prosecutor's single question was not answered, defense counsel immediately objected, the prosecutor did not pursue the matter further, and defense counsel refused a curative instruction. *See Greer v. Miller,* 483 U.S. 756, 764, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (holding that single question by prose-cutor during cross-examination concerning defendant's postarrest silence does not violate Fifth Amendment). The trial court properly denied the motion for a mistrial. *Cf. Foster,* 126 N.M. 177, 967 P.2d 852, 1998–NMCA–163, ¶ 24 (observing that "the district court acted well within the bounds of its discretion in determining that the evidence did not so taint the trial as to require a mistrial").

{37} Defendant also contends that the State's closing argument contained an improper comment upon her right to silence. In his opening statement, defense counsel had told the jury that while Apodaca and Smith were shooting the victim, "this young lady [Defendant] was sitting in the front of Eric Smith's car in the middle of the front seat." Defendant did not testify herself, and no evidence was introduced in support of defense counsel's assertion. During closing argument, as the prosecutor was reviewing the evidence that had been presented during trial, she stated that "Darcy Smith did not sit in the car while [the victim] was murdered. Darcy Smith was not helpless sitting in the car too, too scared, I guess to drive away. Too scared to call the police." Defendant objected, and the prosecutor concluded her remarks with the observation that although defense counsel had stated that Defendant remained in the car, there had been no testimony to that effect. Defendant made a motion for mistrial on the basis that the prosecutor had commented on Defendant's silence. The trial court denied the motion.

{38} The privilege against self-incrimination "prohibits the prosecutor from commenting on a defendant's failure to testify at trial." *Foster,* 126 N.M. 177, 967 P.2d 852, 1998–NMCA–163, ¶ 10 (relying upon *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which held that when a prosecutor asks the jury to draw an adverse inference from a defendant's silence, the defendant's Fifth Amendment privilege is violated). "We review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury ." *State v. Armen-*

*darez,* 113 N.M. 335, 338, 825 P.2d 1245, 1248 (1992). During closing argument, both the prosecution and defense are permitted wide latitude, *State v. Gonzales,* 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992), and the trial court has "wide discretion in dealing with and controlling closing argument," *State v. Taylor,* 104 N.M. 88, 94, 717 P.2d 64, 70 (Ct.App.1986). Nevertheless, remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument. *Id.* "Where it is alleged that improper prosecutorial comments have been made in closing argument, the question is whether the comments deprive the defendant of a fair trial." *State v. Brown,* 1997–NMSC–029, ¶ 23, 123 N.M. 413, 941 P.2d 494. "The general rule is that an isolated comment made during closing argument is not sufficient to warrant reversal." *Id.* We conclude that there was no violation of Defendant's Fifth Amendment rights and therefore no error. The trial court did not abuse its discretion in denying the motion for mistrial.

{39} In a factually similar case, *State v. Henry,* 101 N.M. 266, 681 P.2d 51 (1984), the defense counsel told the jury in opening argument that the defendant would testify and related many of the facts that his testimony would allegedly cover. The defendant, however, did not take the stand. *Id.* On appeal, the defendant argued that certain statements made by the prosecutor were comments on the defendant's failure to testify. *Id.* The state responded that the defense attorney had essentially testified for the defendant during opening and then prevented any cross-examination about the claims made during that opening statement. *Id.* at 267, 681 P.2d at 52. This Court determined that "under certain circumstances, defense counsel may 'open the door' during an opening statement to comments by the prosecutor during closing." *Id.* at 268, 681 P.2d at 53.

{40} We determine that those circumstances occurred during this case. Taken in context, it is clear that the prosecutor was responding to defense counsel's claim during opening argument and was thus commenting on what Defendant had already invited. *See State v. Padilla,* 1996–NMCA–072, ¶ 15, 122 N.M. 92, 920 P.2d 1046 (holding that prosecutor's comment was "a fair response to a claim made by defendant or his counsel" and did not violate the defendant's Fifth Amendment privilege) (quoting *United States v. Robinson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)); *cf. Lockett v. Ohio,* 438 U.S. 586, 595, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (holding that prosecutor's comments about uncontradicted evidence did not violate the Constitution when they were merely responsive to the defendant's failure to present the defense asserted during the opening argument). The remarks were a very brief part of her closing statement and were based on the evidence presented at trial; they were not a comment upon Defendant's refusal to testify. Additionally, we observe that the jury was instructed, under UJI 14–5031 NMRA 2001, that they "must not draw any inference of guilt from the fact that the defendant did not testify in this case, nor should this fact be discussed by you or enter into your deliberations in any way." Juries are presumed to have followed the written instructions. *See Armendarez,* 113 N.M. at 338, 825 P.2d at 1248. We conclude that there was no violation of Defendant's Fifth Amendment rights and therefore no error. The trial court did not abuse its discretion in denying the motion for mistrial.

## IV. CONCLUSION

{41} We conclude that there was sufficient evidence to convict Defendant of false imprisonment and felony murder. The trial court did not err in admitting the testimony of Brian Jones, or in refusing Defendant's tendered instructions on accomplice credibility and mere presence. Defendant's right to cross-examination was not restricted by the trial court. Neither of the prosecutor's statements constituted comments on Defendant's right to silence. The convictions of Defendant for felony murder and false imprisonment are affirmed.

{42} **IT IS SO ORDERED.**

SERNA, C.J., .BACA, MINZNER, and MAES, JJ., concur.