This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35433**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RAY MARTINEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**John J. Romero Jr., District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Jennifer J. Wernersbach, P.C.
Jennifer J. Wernersbach
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant challenges the sufficiency of the evidence supporting his convictions for three counts of criminal sexual penetration in the first degree, contrary to NMSA 1978, Section 30-9-11(D)(1) (2009) and one count of kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003). Defendant also challenges the propriety of the admission of evidence by the district court and comments made during the State's closing arguments. We affirm.

## BACKGROUND

### Pretrial Proceedings

**{2}** Defendant filed a pretrial motion to exclude testimony regarding pornography Mother discovered on her computer the day after he babysat her six-year-old son (Victim). Defendant argued the evidence was subject to exclusion under Rules 11-401, 11-402, 11-403, and 11-404(B) NMRA. A hearing on the motion was held the day before trial began during which Defendant argued that the evidence was not relevant to show that the charged offenses had been committed and that admission would risk unfair prejudice. The State replied that the evidence was relevant to explain why Mother became suspicious of Defendant and why he was no longer permitted to babysit Victim. The district court ruled that the evidence was relevant to show why Mother questioned Victim about Defendant and opined that the evidence would be unfairly prejudicial if the evidence showed that Defendant viewed the pornography. Since no such evidence had been shown, the district court ruled the evidence was permissible.

**{3}** Before the jury was empaneled on the day of trial, the State informed the district court that it had evidence that Defendant had viewed the pornography on Mother's computer and sought permission to introduce the evidence. Defendant renewed his objection on relevance and prejudice. The district court found that although the admission of evidence that Defendant had viewed pornography was prejudicial, it was not unfairly prejudicial and granted the State's motion to introduce the evidence.

### The Trial

**{4}** The following testimony was given at trial. Between late 2010 and early 2011, seventeen-year-old Defendant babysat Victim, on three separate occasions. Prior to babysitting Victim, Defendant and Victim were reintroduced to each other by Victim's mother at the State Fair sometime in September 2010.

**{5}** After their introduction at the State Fair, Defendant babysat Victim at their grandmother's house. While Victim was playing in Defendant's bedroom, Defendant told him to take off his pants. Defendant then took his pants off, locked the door to the bedroom, told Victim to be quiet and grabbed Victim by his head while telling him to "suck his penis." Defendant inserted his penis into Victim's mouth. At some point during the assault, Victim told Defendant that he needed the restroom. Defendant allowed Victim to leave the room but instructed him not to put his pants on. Victim stayed in the restroom for fifteen to twenty minutes as Defendant knocked on the door while telling him to come out. Eventually, Victim unlocked the door and Defendant grabbed him by the hair and pulled him back to the bedroom.

**{6}** Once in the room, Defendant instructed Victim to get on the bed and locked the door again. Defendant performed oral sex on Victim and inserted his penis into Victim's rectum. Victim once again asked to use the restroom and Defendant let him leave. Victim remained in the restroom for approximately ten minutes before Defendant began

knocking on the door. Defendant opened the door and carried Victim to the room while covering his mouth. Back in the room Defendant again penetrated Victim's rectum. Victim's brother knocked on the door and Defendant told him that Victim was sleeping. Shortly after, Defendant and Victim's grandmother called them to dinner and the assault ended. Before leaving, Defendant told Victim "if you tell anyone I'll kill your mom and I'll kill your family."

**{7}** Defendant babysat Victim on two other occasions. On those occasions, Victim avoided being alone with Defendant by locking himself in his room. Although no additional assaults occurred, Defendant did repeat his threat to Victim multiple times. The third and final time Defendant babysat Victim, Mother returned home to find Defendant and his sister asleep on a couch and Victim awake sitting on the floor in her bedroom. Mother also heard "kissing" sounds from her laptop. Mother took Defendant and his sister home to their grandmother's house without investigating the "kissing" sounds. The next day Mother accessed her computer and found numerous pornography websites open. Both Mother and Victim's father questioned Victim about the pornography but he stated that he did not know about it. Mother also asked Victim "if [Defendant] had done anything to [him]," but he told her that nothing had happened. Mother then confronted Defendant at his grandmother's house and after initially denying that he accessed the websites, Defendant admitted to looking at pornography on Mother's computer. Defendant did not babysit Victim again.

**{8}** In 2014, Mother noticed a change in Victim that caused her to suspect that he had been sexually abused. Mother contacted the Albuquerque Police Department (APD) and a S.A.F.E. house interview with Victim was conducted by All Faiths in Albuquerque. During the interview Victim disclosed that he had been sexually abused by Defendant.

**{9}** After closing arguments—and before Defendant's guilty verdict was rendered—Defendant argued in chambers that the State had not proffered sufficient evidence to establish that the abuse occurred in New Mexico. The district court allowed Defendant's argument to be taken up as a motion for judgment of acquittal notwithstanding the verdict and agreed to allow a written motion. Parties briefed the issue and a hearing was held on December 31, 2015. Upon conclusion of the hearing, the district court upheld the verdict, concluding that the jury's inferences were not unreasonable based on the testimony. This appeal followed.

**DISCUSSION**

**I.     There Was Sufficient Evidence To Support Jury's Finding That the Abuse Occurred In New Mexico**

**{10}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We

"view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{11}**    Defendant argues that there was insufficient evidence produced at trial for the jury to determine that the charged offenses occurred in New Mexico. Specifically, Defendant disputes evidence cited by the district court in its denial of Defendant's motion for acquittal notwithstanding the verdict.

**{12}**    It is well established that an essential element to be proven by the State is where the offense occurred because crimes must be prosecuted in the jurisdiction where they are committed. *Compare State v. Fierro*, 2014-NMCA-004, ¶ 31, 315 P.3d 319 (affirming the defendant's conviction because evidence was sufficient to establish the offense occurred in New Mexico), *with State v. Losolla*, 1972-NMCA-085, ¶ 4, 84 N.M. 151, 500 P.2d 436 (reversing the defendant's conviction where the state failed to prove the offense charged was committed in New Mexico). *See generally State v. Allen*, 2014-NMCA-111, ¶¶ 11-13, 336 P.3d 1007 (discussing the history of territorial jurisdiction).

**{13}**    In this case there was sufficient evidence to establish that the charged crimes occurred in New Mexico. According to the testimony, the abuse occurred the first time Defendant babysat Victim "during State Fair time." Mother testified that before Defendant babysat Victim for the first time, she met Defendant and his sister at "the State Fair of 2010." Counsel for the State asked, "The State Fair typically happens in what month here?" Mother responded, "The month of September." Defendant concedes that "[l]ater that same day [after meeting Mother and Victim at the State Fair, Defendant and Defendant's sister watched Victim] at the home they shared with their grandmother." Defendant contends that the evidence is insufficient to establish that the parties were referring to the New Mexico State Fair. However, from Mother's response to counsel's question about when the State Fair takes place "here," a jury could have reasonably inferred that Mother's testimony about meeting Defendant at the State Fair was referring to the *New Mexico* State Fair. Further, as Defendant babysat Victim for the first time later that day at their grandmother's house, a jury could have reasonably inferred that grandmother's house was in New Mexico, as it is unlikely that the parties would have gone to the New Mexico State Fair, and then driven to another state where Defendant babysat Victim. The State's argument is bolstered by Mother's testimony that on the last occasion Defendant babysat Victim she "immediately" drove him to his grandmother's house and that she "immediately" confronted Defendant there the next morning. Mother's use of the term "immediately" coupled with the implied short period of time between the two trips to the grandmother's house creates a reasonable inference that the houses were in close proximity to each other.

**{14}**    Lending further support to the reasonable inference that the charged crimes took place in New Mexico, the jury heard evidence that Mother lived in Albuquerque at the time of trial, that the crimes were investigated by APD and the S.A.F.E house interview

took place at All Faiths in Albuquerque. The State directs us to *State v. Litteral*, 1990-NMSC-059, 110 N.M. 138, 793 P.2d 268, to support its argument that the jury could have inferred the abuse occurred in New Mexico because APD investigated the claims. In *Litteral*, our Supreme Court considered an investigation by APD in addition to evidence showing that the murder at issue was committed at a house in Albuquerque and concluded that it was reasonable for the jury to infer that the crime occurred in New Mexico. *Id.* ¶ 19. Similarly here, when viewed together the APD investigation, the interview at All Faiths in Albuquerque, and Mother's testimony, all support a reasonable inference that the abuse occurred in New Mexico. We therefore conclude that the State presented sufficient evidence to support the jury's verdict.

## II.     The District Court Did Not Abuse Its Discretion in Admitting Evidence That Defendant Watched Pornography

**{15}**     Defendant argues that the district court's admission of evidence that he watched pornography while babysitting Victim was error because the evidence was not relevant to prove the abuse charged, if relevant the evidence was unfairly prejudicial, and, if not unfairly prejudicial, the evidence was improper character evidence. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citations omitted).

### A.     Relevance

**{16}**     Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence, . . . and the fact is of consequence in determining the action." Rule 11-401. "Relevance does not exist in a vacuum; instead, it is the logical relationship between evidence and a proposition in issue that the party seeks to prove." *State v. Duncan*, 1990-NMCA-063, ¶ 18, 113 N.M. 637, 830 P.2d 554. Relevant evidence does not have to relate directly to the facts in controversy. *See State v. Ramming*, 1987-NMCA-067, ¶ 33, 106 N.M. 42, 738 P.2d 914. When relevance is in doubt "any doubt should be resolved in favor of admissibility." *State v. Stampley*, 1999-NMSC-027, ¶ 38, 127 N.M. 426, 982 P.2d 477.

**{17}**     The State argued below and on appeal that the evidence was necessary to show why Mother became suspicious of the Defendant and why he was never allowed to babysit Victim again. Although the evidence does not relate to the sexual abuse that occurred at the grandmother's house, it does bear a logical relationship to the proposition that the State sought to prove, that is, why Mother became suspicious of Defendant and why Defendant only babysat Victim three times. Therefore we conclude that the evidence was relevant under Rule 11-401.

**B. Rules 11-403 and 11-404(B)**

**{18}** Citing Rules 11-403 and 11-404(B), Defendant argues that the probative value of the evidence is outweighed by its prejudicial effect and the evidence should not have been admitted because a jury was more likely to convict him if it learned he viewed pornography while babysitting Victim. Specifically, he argues that the evidence "only served to enflame the passions of the jury and suggest[ed] to them that if [Defendant] watched pornography while babysitting [he was also likely to sexually abuse Victim]." In essence, Defendant argues that despite the stated purpose of the evidence, the State surreptitiously intended to use it to establish Defendant's propensity to commit abuse.

**{19}** In support of his Rule 11-404(B) argument that the State wrongfully introduced the evidence of pornography to prove Defendant's propensity to commit abuse, Defendant directs us to *State v. Lucero*, 1992-NMCA-107, ¶¶ 18-19, 114 N.M 489, 840 P.2d 1255. Defendant's reliance on *Lucero* is misplaced. Rule 11-404(B)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The evidence at issue in *Lucero* was explicitly offered under Rule 11-404 as a means to prove motive. *Lucero*, 1992-NMCA-107, ¶ 6. Here there was no such assertion by the State. *Lucero* does not assist Defendant. Nor was there any indication in the record that the evidence was used for anything other than its stated purpose, that is to show why Mother became suspicious of Defendant and why she no longer permitted Defendant to babysit Victim. *See State v Ruiz*, 1995-NMCA-007, ¶ 15, 119 N.M. 515 (stating that evidence is admissible where it provides context for other admissible evidence). Thus we are left with Defendant's bare assertion that the evidence was proffered under Rule 11-404(B).

**{20}** Under Rule 11-403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted). "The determination of unfair prejudice is fact sensitive, and, accordingly, much leeway is given trial judges who must fairly weigh probative value against probable dangers." *State v. Bailey*, 2015-NMCA-102, ¶ 20, 357 P.3d 423 (internal quotation marks and citation omitted).

**{21}** While pornography may carry a negative connotation among some jurors, in this case no images or description of the pornography were introduced. Mother's testimony on the subject was brief and isolated. Moreover, Mother's testimony provided context to why she did not allow Defendant to babysit anymore. We cannot conclude her testimony on the subject was one characterized as "sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *Stanley*, 2001-NMSC-037, ¶ 17, (internal quotation marks and citation

omitted). Based on the foregoing we conclude the district court's finding that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice under the factors identified in Rule 11-403, and find no abuse of discretion.

**{22}** Additionally, because we find that the evidence was not offered to show his propensity to abuse Victim, the State was not obligated to provide notice of intent to introduce propensity evidence under Rule 11-404(B)(2). Accordingly, the district court did not abuse its discretion by allowing the evidence without notice from the State.

### III. There Was No Prosecutorial Misconduct

**{23}** Defendant argues that the State improperly referred to facts not in evidence during closing argument implicating his constitutional right to be presumed innocent. The State counters that the comments were a legitimate response to matters introduced by the defense during closing argument.

**{24}** "When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the [district] court's ruling under the deferential standard of abuse of discretion, because the [district] court is in the best position to evaluate the significance of any alleged prosecutorial errors[.]" *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citations omitted). "We review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted).

**{25}** "During closing argument, both the prosecution and defense are permitted wide latitude, and the [district] court has wide discretion in dealing with and controlling closing argument." *Id.* (internal quotation marks and citations omitted). "Nevertheless, remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument." *Id.*

**{26}** We first examine the State's comments in the context in which they arose and determine if there was error. During closing argument defense counsel repeatedly argued the absence of corroborative witness testimony and the fact that the State did not present testimony from other individuals who were present in grandmother's house on the night Victim testified the abuse occurred. Defense counsel argued:

> You have the Detective on the stand and he indicated to you that he did a fair and full investigation and talked to the people that came up in his case. [Defendant's sister] would have been one of them, [she] didn't take the stand. The State has the obligation to present this evidence. [Defendant's sister] didn't take the stand, they didn't bring her up to say if that happened or not. We don't know, these are the whys, the valid whys, that we are not having answered. According to [Victim], [Victim's brother]

was in the room, in the house and came knocking on the door. He knocked on the door and said, . . . Hey what's going on? [A]ccording to [Victim, Defendant] told him that he was sleeping. So, where's [Victim's brother]? A fair and full investigation, the Detective would have talked to him, seen if that was true. You don't hear from him, we don't know if that is true or not.

The State responded during rebuttal that it had "interviewed more than four people." Defendant objected, arguing that the fact that other witnesses had been interviewed was not introduced into evidence. The district court responded in open court that the jury had been instructed that arguments of counsel were not evidence. We fail to see how this comment was improper given that it was defense counsel who first argued to the jury that the Detective would have interviewed Defendant's sister and the Victim's brother. *See State v. Sosa*, 2009-NMSC-056, ¶ 23, 147 N.M. 351, 223 P.3d 348 (concluding that prosecutor's comments were proper use of rebuttal in response to defense counsel's closing argument).

**{27}** Even if we were to conclude the State's comments were improper, reversal is not warranted. "Where it is alleged that improper prosecutorial comments have been made in closing argument, the question is whether the comments deprive the defendant of a fair trial." *Smith*, 2001-NMSC-004, ¶ 38 (internal quotation mark and citation omitted). We give great weight in our deliberations as to: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26. "Our courts also consider whether the evidence of guilt is overwhelming, whether the improper statement is corrected by counsel or limited by the court, or whether the fact manipulated by the statement is determinative to the outcome of the case." *State v. Sena*, 2018-NMCA-037, ¶ 17, 419 P.3d 1240. "The common thread running through the cases finding reversible error is that the [State's] comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* (alteration, internal quotation marks, and citation omitted).

**{28}** Facially, the comments made by the State do not invade a distinct constitutional protection. To the extent Defendant argues that his constitutional right to be considered innocent was infringed, we disagree. *See id.* ¶ 18 (noting the "presumption of innocence . . . is not constitutionally mandated"). Further, Defendant's basis for this argument is a claim that the State asserted that he would have called the other witnesses if they had been useful to his case. Our review of the record does not reflect that the State ever made such a statement.

**{29}** The State's comments were relatively brief and isolated to rebuttal arguments. *See id.* (stating that the prosecutor's comments were confined to closing argument and relatively brief); *State v. Torres*, 2012-NMSC-016, ¶ 14, 279 P.3d 740 (characterizing prosecutor's actions during rebuttal as a flurry of activity all at once). Prosecutors are granted "wide latitude during closing arguments" and "[a] prosecutor's remarks must . . .

be based on the evidence or made in response to the defendant's arguments." *Sena*, 2018-NMCA-037, ¶ 13. As stated above, Defense counsel introduced the fact that other witnesses in grandmother's house were likely interviewed and could have been presented by the State.

**{30}**     In the broader context, the State's limited comments were unlikely to prejudice the jury so as to deny Defendant a fair trial. The fact that other witnesses had been interviewed was not outcome determinative, especially given the thrust of Defendant's closing arguments. As the State correctly noted, the State's failure to call those witnesses actually underscores Defendant's point that no one else in the house could corroborate Victim's allegations and thus could not prejudice the Defendant. Further, in light of the significant evidence of Defendant's guilt, including Victim's graphic and uncontroverted testimony, the limited remarks by the State were less likely to prejudice the jury. *See id.* ¶ 19.

**{31}**     Thus, even if the State's comments were improper, they did not constitute reversible error because they did not invade a distinct constitutional protection, were brief and isolated, were made in direct response to Defendant's arguments, and were likely not outcome determinative in light of other evidence.

**CONCLUSION**

**{32}**     Based on the forgoing we affirm Defendant's convictions.

**{33}**     **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JULIE J. VARGAS, Judge**