This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36625**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ROY CAVAZOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Roy Cavazos
Clovis, NM

Pro Se Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**     Defendant Roy Cavazos appeals his convictions of four counts of second-degree criminal sexual penetration (CSP), in violation of NMSA 1978, Section 30-9-11(E)(6) (2009), one count of kidnapping, in violation of NMSA 1978, Section 30-4-1 (2003), one count of assault with intent to commit a violent felony, in violation of NMSA 1978, Section 30-3-3 (1977), and one count of trafficking a controlled substance, in violation of NMSA 1978, Section 30-31-20 (2006). Defendant raises the following issues on appeal: (1) the district court erred in summarily dismissing Defendant's *Batson* challenge; (2) the prosecutor engaged in prosecutorial misconduct during closing argument; (3) the

omission of a deadly weapon instruction resulted in fundamental error; (4) Defendant's multiple convictions for CSP violate double jeopardy; and (5) there was insufficient evidence to support Defendant's convictions for trafficking a controlled substance and kidnapping.[1] We affirm.

## BACKGROUND

{2}     Because this is a memorandum opinion and the parties are familiar with the facts of this case, we provide the following summary of events taken from testimony adduced at trial, and reserve discussion of additional pertinent facts for our analysis. Around 11:00 p.m. one evening, Defendant approached Victim, who was sitting on her front porch outside her apartment, and told her he lost his wallet. After helping Defendant search for his wallet, Victim told Defendant she had to work the next day and began to enter her apartment, at which point Defendant suddenly pushed her door open. Victim sprayed Defendant with pepper spray but was unsuccessful in keeping him from entering her apartment. Once inside, Defendant broke Victim's cell phone, closed the front door, walked Victim to her kitchen, and made sure her back door was locked. Defendant then took butter knives from the kitchen and wedged them into the frame of the front and back door in such a manner that the doors could not be opened from the outside. At the time, Victim's ten-month-old daughter was asleep in one of the bedrooms.

{3}     Defendant told Victim to go to her couch and remove her clothes. Defendant sexually assaulted Victim by penetrating her vagina with his penis, despite her requests to stop. Defendant then made Victim go to her bathroom and enter the shower, where he washed her vagina and made her shave her pubic hair. After showering, Defendant made Victim put on different underwear and return to the living room. At some point after showering, Defendant penetrated Victim's vagina with his penis again while she was on the bed that pulled out from the couch. Defendant also forced Victim to perform fellatio. Additionally, sometime after the first sexual assault but before the next morning, Defendant gave Victim a pipe containing methamphetamine and instructed her to smoke it, which she did.

{4}     During each sexual assault and throughout the entire encounter, Defendant either carried knives or kept them accessible. Victim testified that she did not scream, attempt to leave, or fight back, explaining, "I couldn't, he was walking, he had knives, he was walking around with the knives from my kitchen, there were the ones in the doors, .

---

1Defendant makes numerous additional arguments against the propriety of his convictions. However, these arguments are unclear, conclusory, and undeveloped. We therefore decline to address them. *See State v. Guerra*, 2012-NMSC-014, ¶ 21 278 P.3d 1031 (acknowledging that appellate courts are under no obligation to review unclear or undeveloped arguments). We encourage litigants to limit the number of issues they choose to raise on appeal in order to ensure that the issues presented are ones that can be adequately supported by argument, authority, and factual support in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131 ("[W]e encourage litigants to consider carefully whether the number of issues they intend to appeal will negatively impact the efficacy with which each of those issues can be presented.").

. . he was walking around with them. I didn't want to try to get out and leave my daughter" and "I didn't want to do anything to make him mad to hurt my daughter." The following day, Victim's mother stopped by the apartment to check on Victim. Defendant did not let Victim answer the door and instead made Victim sit in the bathroom with her daughter until her mother left. After Victim's mother left, Defendant again penetrated Victim's vagina with his penis. Victim's mother returned to the apartment around 5:00 p.m., at which point Victim convinced Defendant to let her leave with her daughter. Defendant was eventually arrested and convicted after a jury trial. This appeal followed.

## DISCUSSION

### I.      The *Batson* Challenge

{5}      Defendant first claims the district court erred in summarily rejecting his *Batson* challenge to the State's peremptory strike of a Hispanic surnamed juror, in violation of his equal protection rights.[2] *See State v. Aragon*, 1989-NMSC-077, ¶ 8, 109 N.M. 197, 784 P.2d 16 ("[A] defendant may challenge the constitutionality of the state's selection of members of the petit jury when the defendant shows that he is a member of a cognizable racial group and establishes a prima facie case that potential jurors from his group were excluded from the jury for reasons of race." (citing *Batson v. Kentucky*, 476 U.S. 79 (1986))).

{6}      New Mexico district courts follow a three-step analysis to determine whether a party has improperly used a peremptory challenge in a racially discriminatory manner. *State v. Jones*, 1997-NMSC-016, ¶ 3, 123 N.M. 73, 934 P.2d 267. First, a defendant must make a prima facie showing of racial discrimination. *Id.* ¶ 3. To establish a prima facie case, the challenging party must show that "(1) a peremptory challenge was used to remove a member of a protected group from the jury panel, and (2) the facts and other related circumstances raise an inference that the individual was excluded solely on the basis of his or her membership in a protected group." *State v. Salas*, 2010-NMSC-028, ¶ 31, 148 N.M. 313, 236 P.3d 32. The challenging party may do this by establishing a pattern of strikes against jurors of a particular racial group. *State v. Gonzales*, 1991-NMCA-007, ¶ 14, 111 N.M. 590, 595, 808 P.2d 40, *modified on other grounds by State v. Dominguez*, 1993-NMCA-042, ¶ 24, 115 N.M. 445, 853 P.2d 147. Second, if the challenging party makes its prima facie case, the proponent of the peremptory strike must articulate a racially neutral explanation for its challenge. *Jones*, 1997-NMSC-016, ¶ 3. Third, if the district court accepts the proponent's explanation, the challenging party must show that the reason given is actually a pretext for a racially discriminatory intent. *Id.* In reviewing a claim of racial discrimination in the use of

---

[2]Defendant additionally appears to claim that the State violated his right to equal protection by using two of its three peremptory challenges to exclude males from the jury. However, beyond this bare-bones assertion, Defendant advances no argument as to how the State exercised its peremptory strikes against males in a discriminatory manner. "[C]ounsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate procedure." *State v. Clifford*, 1994-NMSC-048, ¶ 19, 117 N.M. 508, 873 P.2d 254. We therefore do not address this claim.

peremptory challenges, we defer to the district court's factual findings, but review its legal conclusions de novo. *State v. Martinez*, 2002-NMCA-036, ¶ 21, 131 N.M. 746, 42 P.3d 851.

**{7}** Here, Defendant objected and raised a *Batson* challenge after the State exercised a peremptory challenge against a Hispanic surnamed juror. In response, the State argued that no pattern of discrimination had been established. The district court agreed and stated that if a pattern was established, it would require the State to provide a racially neutral reason for the strike. On appeal, Defendant argues that "a pattern had already been established because two of the four jurors the prosecutor requested stricken for cause were Hispanic surnamed." We disagree. While Defendant relies on jurors who the State sought to excuse *for cause* to establish a pattern of strikes against jurors of a particular protected class, Defendant fails to provide us with authority that those jurors should be considered in our analysis, and we therefore assume none exists. *See Salas*, 2010-NMSC-028, ¶ 31 (requiring a challenging party to show that "(1) a *peremptory* challenge was used to remove a member of a protected group from the jury panel." (emphasis added)); *In re Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that when a party fails to cite authority for an argument, we may assume none exists). Absent these two jurors, Defendant points to the single Hispanic surnamed juror who the State excused using a peremptory challenge. Even if we were to consider those jurors who the State sought to excuse for cause to determine whether the State had engaged in an impermissible pattern of strikes, Defendant fails to show how the facts and other related circumstances raise an inference that the jurors were excluded solely on the basis of his or her membership in a protected group. *See Salas*, 2010-NMSC-028, ¶ 31. Therefore, we conclude the district court was not obligated to proceed to the next step of a *Batson* challenge. *See Salas*, 2010-NMSC-028, ¶ 32 (stating that the burden shifts to the proponent of the peremptory strike to articulate a racially neutral explanation for its challenge only after the opponent makes a prima facie showing).

## II.    Prosecutorial Misconduct

**{8}** Defendant next contends he was deprived of a fair trial due to prosecutorial misconduct during closing arguments because the prosecutor offered personal opinions, vouched for the Victim's credibility, and argued facts outside the record. We find no error, fundamental or otherwise, in the prosecutor's remarks.

**{9}** "When an issue of prosecutorial misconduct is preserved by a timely objection at trial, we review the [district] court's ruling under the deferential standard of abuse of discretion, because the [district] court is in the best position to evaluate the significance of any alleged prosecutorial errors[.]" *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citations omitted). We review unpreserved claims of prosecutorial misconduct for fundamental error. *State v. Rojo*, 1999-NMSC-001, ¶ 55, 126 N.M. 438, 971 P.2d 829. "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial[.]" *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. "To find

fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted). "[W]e will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.*

**{10}** "During closing argument, both the prosecution and defense are permitted wide latitude, and the [district] court has wide discretion in dealing with and controlling closing argument." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citations omitted). "Nevertheless, remarks by the prosecutor must be based upon the evidence or be in response to the defendant's argument." *Id.* "Where it is alleged that improper prosecutorial comments have been made in closing argument, the question is whether the comments deprive the defendant of a fair trial." *Id.* (internal quotation mark and citation omitted). We give great weight in our deliberations as to: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26. "In applying these factors, the statements must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.* "Our courts also consider whether the evidence of guilt is overwhelming, whether the improper statement is corrected by counsel or limited by the court, or whether the fact manipulated by the statement is determinative to the outcome of the case." *State v. Sena*, 2018-NMCA-037, ¶ 17, 419 P.3d 1240 *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-36932, May 25, 2018). "The common thread running through the cases finding reversible error is that the [State's] comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* (alteration, internal quotation marks, and citation omitted).

**{11}** We first address the claims that Defendant preserved for appeal by timely objecting.[3] Defendant objected twice during the State's rebuttal argument: first when the State argued Defendant was a "controller," and second when the prosecutor argued that she believed she had provided sufficient evidence to convict Defendant. We address each argument in turn.

**{12}** During closing argument, the prosecutor reviewed Victim's testimony that Defendant walked around with knives, that Victim was going to do whatever it took to protect her daughter, and that Defendant controlled her with the knives. In response, defense counsel argued that Victim was a methamphetamine addict who was lying to destroy Defendant's life. Defense counsel also argued that Victim let Defendant into her apartment and voluntarily engaged in all of the sexual activity with Defendant. During

---

3Defendant erroneously contends that he preserved all of his claims surrounding the prosecutor's closing arguments by raising them in a motion for a new trial. Rather, a defendant must timely object to the prosecutor's statements in order to preserve a claim of prosecutorial misconduct. *See Rojo*, 1999-NMSC-001, ¶ 55 ("Failure to make a timely objection to alleged improper argument bars review on appeal, unless the impropriety constitutes fundamental error.").

the State's rebuttal, the prosecutor argued, "[D]o you know what [Defendant] is? He's a controller. That's what people who rape people are, they're controllers. He's one of those guys who believes nothing's going to happen to him[,]" at which point Defendant objected.

**{13}** Defendant contends the prosecutor's comment was improper because "[t]here was absolutely no evidence submitted at trial regarding the predisposition of rapists to be controllers or that [Defendant] was a controller and thus a rapist." However, defense counsel invited the prosecutor's remarks with his argument that Victim voluntarily participated in sexual activity with Defendant. *See Sosa*, 2009-NMSC-056, ¶ 33 ("[W]e are least likely to find error where the defense has 'opened the door' to the prosecutor's comments by its own argument."). Moreover, we fail to see how this comment was improper, as it appeared to be based on Victim's testimony that she felt controlled by Defendant during the encounter because he was walking around with knives.

> Defendant's second objection took place during the following exchange:
>
> State: "I believe I have given you all the evidence to prove beyond a reasonable doubt that [Victim]—"
>
> Defendant: "Objection Your Honor, what her belief, what her personal belief is, is not appropriate argument."
>
> State: "I submit I have given you the evidence—"
>
> District Court: "Okay."
>
> State: "—to convict the Defendant of all the counts, that he committed, on [Victim]."

**{14}** Defendant argues this comment was an improper personal opinion. *See* Rule 16-304(E) NMRA ("A lawyer shall not . . . state a personal opinion as to . . . the guilt or innocence of an accused[.]"). However, the prosecutor self-corrected her argument after Defendant objected, and Defendant did not ask for a curative instruction or further object to the prosecutor's second statement. Under these circumstances, we conclude the district court did not abuse its discretion for failing to provide an additional remedy sua sponte. *See Sena*, 2018-NMCA-037, ¶ 17 ("Our courts also consider . . . whether the improper statement is corrected by counsel.").

**{15}** Defendant also directs this Court to several other comments made by the State, contending that they were acts of prosecutorial misconduct resulting in fundamental error. Specifically, Defendant takes issue with several arguments made by the prosecutor, which Defendant claims either asserted an improper opinion, vouched for Victim's credibility, or improperly argued facts outside the record. However, besides citing cases for general propositions regarding prosecutorial misconduct, Defendant provides no real analysis as to how the prosecutor's comments were actually improper

in the context in which they were made. *See Smith*, 2001-NMSC-004, ¶ 38 (requiring that comments made during closing arguments be reviewed in the context in which they occurred). Nor does Defendant explain how the statements of which he complains create a "reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted). Instead, Defendant merely asserts that the prosecutor's comments were improper and prejudicial. However, a mere assertion of prejudice is not sufficient to establish prejudice. *See State v. Malloy*, 2001-NMCA-067, ¶ 21, 131 N.M. 222, 34 P.3d 611 ("Mere assertion of prejudice is not a showing of prejudice."). We will not do Defendant's work for him and decline to develop the substance of his argument or "guess at what his argument might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

## III.    Jury Instructions

**{16}**    Defendant contends the district court erred by failing to issue a jury instruction defining "deadly weapon" in relation to his CSP charges. *See* NMSA 1978, § 30-1-12(B) (1963) (defining the term "deadly weapon"). Defendant does not indicate, nor can we find, where in the record he preserved this error. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 ("Generally, to preserve error on a trial court's refusal to give a tendered instruction, the [a]ppellant must tender a legally correct statement of the law."). We accordingly review for fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("Because [the d]efendant failed to preserve any error . . . we review only for fundamental error.").

**{17}**    Fundamental error occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *Id.* ¶ 17. When this Court reviews jury instructions for fundamental error, we will reverse the jury verdict only if doing so is "necessary to prevent a miscarriage of justice." *State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (internal quotation marks and citation omitted). In reviewing a district court's failure to instruct, "[w]e must determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Barber*, 2004-NMSC-019, ¶ 19. "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{18}**    The State charged Defendant with second-degree CSP for being armed with a deadly weapon during the commission of the CSPs based on Defendant's possession of knives he took from Victim's kitchen. *See* Section 30-9-11(E)(6). Defendant argues that the district court should have instructed the jury to find that the knives he took from Victim's kitchen constituted deadly weapons because they are not specifically enumerated as deadly weapons under Section 30-1-12(B). We agree. *See State v. Nick R.*, 2009-NMSC-050, ¶ 37, 147 N.M. 182, 218 P.3d 868 ("[O]ur cases hold that . . . [i]n a simple possession case, the jury must find that the object was possessed with intent to

carry it as a weapon and that it was capable of causing the wounds described in the statute. These are determinations that cannot be ruled on by a trial court as a matter of law and taken from the jury's consideration, no matter how obvious the existence of any essential element of an offense may seem."); *State v. Traeger*, 2001-NMSC-022, ¶ 12, 130 N.M. 618, 29 P.3d 518 ("[I]f the item is specifically listed in Section 30-1-12(B), it is considered a deadly weapon as a matter of law. If the item is not specifically listed, the question of whether the object is a deadly weapon should be given to the jury to decide."). While Section 30-1-12(B) lists specific types of knives, as well as several generic catchalls, it does not reference kitchen knives or all knives in general. *See Nick R.*, 2009-NMSC-050, ¶ 16. Thus, the jury was required to find that the knives Defendant possessed during the CSPs were "capable of producing death or great bodily harm[.]" Section 30-1-12(B); *see Nick R.*, 2009-NMSC-050, ¶ 37.

**{19}**    However, Defendant fails to demonstrate how this omission rises to the level of fundamental error. Besides summarily asserting that the omission of a deadly weapon instruction constitutes fundamental error, Defendant fails to discuss relevant case law or explain how the omission constituted a miscarriage of justice under the circumstances. We therefore decline to review this underdeveloped argument any further and hold that the failure to issue a jury instruction defining "deadly weapon" did not constitute fundamental error. *See State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 ("[T]his Court's policy is to refrain from reviewing unclear or undeveloped arguments which require us to guess at what parties' arguments might be[.]" (internal quotation marks and citation omitted)).

## VI.    Double Jeopardy

**{20}**    To the extent that Defendant argues his convictions for multiple counts of CSP violate double jeopardy,[4] we disagree. In light of Defendant's acquittal on three additional counts of CSP, we address Defendant's double jeopardy argument only as to his four CSP convictions, consisting of three acts of penile penetration, as charged in Counts 3, 4, 5, and one act of fellatio, as charged in Count 7.

**{21}**    Double jeopardy protects against multiple punishments for the same offense. *Swafford v. State*, 1991-NMSC-043, ¶¶ 7-8, 112 N.M. 3, 810 P.2d 1223. Appellate courts "generally review double jeopardy claims de novo." *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737. "However, where factual issues are intertwined with the double jeopardy analysis, we review the [district] court's fact determinations under a deferential substantial evidence standard of review." *Id.* We

---

4Defendant characterizes his argument as a due process violation for allowing carbon-copy counts of CSP to go to the jury, "making it impossible for him to be protected from the danger of double jeopardy." However, Defendant fails to show where he preserved his due process argument. Nor does he argue that this constituted fundamental error. Thus, we decline to address Defendant's due process argument. *See State v. Martinez*, 2007-NMCA-160, ¶ 4, 143 N.M. 96, 173 P.3d 18 ("Due process claims will not be addressed when raised for the first time on appeal."). Instead, we address Defendant's argument only to the extent that it raises double jeopardy concerns. *See id*. ¶ 5 (stating that defendants may raise double jeopardy challenge on appeal regardless of whether the issue was preserved).

review unit of prosecution claims in the context of Section 30-9-11 by reference to *Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624, in which our Supreme Court observed that the language of Section 30-9-11 "does not indicate unambiguously whether the [L]egislature intended . . . to create a separate offense for each penetration occurring during a continuous sexual assault." Accordingly, we must determine whether Defendant's acts were separated by sufficient "indicia of distinctness" to justify multiple punishments. *See State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289 (observing that the second step of a unit of prosecution case involves determining whether a defendant's acts are separated by sufficient "indicia of distinctness" to justify multiple punishments under the same statute). Whether Defendant's acts were separated by sufficient indicia of distinctness, we consider:

> (1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses); (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses); (3) existence of an intervening event; (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); (5) defendant's intent as evidenced by his conduct and utterances; and (6) number of victims[.]

*Herron*, 1991-NMSC-012, ¶ 15. "Except for penetrations of separate orifices with the same object, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under Section 30-9-11." *Herron*, 1991-NMSC-012, ¶ 15.

**{22}** Defendant argues that there was insufficient indicia of distinctness between the CSPs because Victim testified that all of the sexual contact occurred in her living room and that she did not know how many times sexual contact occurred. However, looking at the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence from which the jury could have found that each CSP was in some sense distinct from the others. *See State v. McClendon*, 2001-NMSC-023, ¶ 3, 130 N.M. 551, 28 P.3d 1092 ("In evaluating [the d]efendant's [double jeopardy] claim, we view the evidence in the light most favorable to the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict."). While it is unclear from the jury instructions which act of CSP supported the jury's verdicts for Counts 3, 4, and 5, the State presented evidence of at least three separate acts of penile penetration of Victim's vagina. Although Victim could not remember how many times Defendant sexually assaulted her, she testified that Defendant assaulted her more than once and that Defendant made her put on different underwear after each sexual assault, which she estimated happened four times. More specifically, Victim testified that, shortly after Defendant forced his way into Victim's apartment, he directed Victim to remove her clothing, after which he sexually assaulted her by penetrating her vagina with his penis, despite her requests to stop. After completing the first act of CSP, Victim testified that Defendant forced her into her bathroom shower, where he made her shave her pubic hair, put on clean underwear, and return to the living room. Sometime after showering,

Victim testified that Defendant sexually assaulted her again by penetrating her vagina with his penis while the two were on the bed that comes out of the couch in the living room. Victim also testified that Defendant forced her to engage in fellatio at some point during the night. Additionally, Victim testified that Defendant sexually assaulted her by penetrating her vagina with his penis the following morning after her mother stopped by.

**{23}** Although all of the sexual contact occurred in the same location, we conclude that sufficient indicia of distinctness separated the CSPs. Forcing Victim into the shower, shaving her pubic hair, and requiring her to put on clean underwear prior to committing a second act of CSP constituted sufficient intervening events to separate the first CSP from the second. *Cf. State v. Wilson*, 1993-NMCA-074, ¶ 9, 117 N.M. 11, 868 P.2d 656 (holding that the defendant's acts of forcing the victim to engage in fellatio were separate and distinct because the defendant moved the victim to another room and an intervening event took place between the two acts). Furthermore, the last act of CSP did not occur until the next day after Victim's mother came by the apartment. Given the time and intervening acts between the CSPs, we conclude that Defendant's three convictions of CSP based on penile penetration of the vagina were separated by sufficient indicia of distinctness to justify multiple punishments. Lastly, Defendant forcing Victim to perform fellatio was inherently distinct from the other CSP convictions. *See id.* ("[T]he acts of anal intercourse, sexual intercourse, and . . . fellatio constitute separate offenses under *Herron*."). Accordingly, Defendant's convictions for CSP do not violate double jeopardy.

## V. Sufficiency of the Evidence

**{24}** Finally, Defendant argues there was insufficient evidence to support his convictions for trafficking a controlled substance and kidnapping. We disagree. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

## A. Trafficking a Controlled Substance

**{25}** Consistent with UJI 14-3110 NMRA, the jury was instructed that in order to convict defendant of trafficking a controlled substance, it had to find, in relevant part, that (1) "[D]efendant transferred, caused the transfer of, or attempted to transfer methamphetamine to another;" and (2) "[D]efendant knew it was methamphetamine or believed it to be methamphetamine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law[.]" Defendant contends that

there was insufficient evidence that he knew the pipe he handed to Victim contained methamphetamine. We disagree. Victim testified that Defendant gave her a pipe containing methamphetamine and instructed her to smoke it. Furthermore, an officer testified that Defendant later told the police that he and Victim had smoked methamphetamine together. We conclude that this constituted "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Defendant knew or believed the pipe he handed to Victim contained methamphetamine. *Salgado*, 1999-NMSC-008, ¶ 25 (internal quotation marks and citation omitted).

## B.    Kidnapping

**{26}**    Defendant next argues that there was insufficient evidence of his kidnapping conviction. Specifically, Defendant argues that there was insufficient evidence that he kidnapped Victim because his confinement of Victim was incidental to the multiple CSPs. *See State v. Trujillo*, 2012-NMCA-112, ¶¶ 2-3, 6, 289 P.3d 238 (reversing kidnapping conviction based on the defendant's momentary restraint of victim during a fight that lasted a few minutes); *State v. Crain*, 1997-NMCA-101, ¶¶ 2-4, 21, 124 N.M. 84, 946 P.2d 1095 (reversing kidnapping conviction based on the defendant's refusal to let the victim out of his car during his commission of a single act of CSP). However, Defendant's confinement of Victim was not merely incidental to the CSPs. Here, Victim testified that Defendant pushed his way into Victim's apartment and confined her in the apartment against her will by wedging knives into the doors. The confinement in this case lasted for a substantial period of time—seventeen to eighteen hours. During that time, Defendant forced Victim into different rooms and committed multiple acts of CSP. Thus, unlike *Trujillo* and *Crain*, Defendant's restraint of Victim was far from momentary and occurred both before and after he committed multiple acts of CSP. We therefore conclude that there was substantial evidence of restraint that was not merely incidental to the CSPs. *See State v. Herrera*, 2015-NMCA-116, ¶ 10, 362 P.3d 167 (concluding a conviction for kidnapping based on a one-and-a-half to two hour confinement was "simply not incidental to or inherent in" the defendant's other convictions).

## CONCLUSION

**{27}**    For the foregoing reasons, we affirm.

**{28}   IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JULIE J. VARGAS, Judge**