This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40400**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**OMAR ADAN BALTAZAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** The opinion filed on September 12, 2024, is hereby withdrawn, and this opinion is substituted in its place, following Defendant's timely motion for rehearing, which we grant.

**{2}** A jury convicted Defendant of eight counts of third degree criminal sexual penetration (CSP III), contrary to NMSA 1978, Section 30-9-11(F) (2009); one count of

first degree kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003); and one count of aggravated battery against a household member, contrary to NMSA 1978, Section 30-3-16(B) (2018). On appeal, Defendant argues that (1) the multiple CSP III charges violate double jeopardy protections; (2) prosecutorial misconduct warrants a new trial; (3) two of the convictions are not supported by the evidence; (4) presentence confinement credit was incorrectly calculated; and (5) for the CSP III convictions, the State did not substantiate the serious violent offender designations for purposes of the earned meritorious deductions statute under NMSA 1978, Section 33-2-34 (2015). The State concedes that the record does not support the challenged serious violent offender designations. Our review of the record confirms the State's concession, and without further analysis, we reverse the judgment on that issue. *See State v. Solano*, 2009-NMCA-098, ¶ 10, 146 N.M. 831, 215 P.3d 769 (requiring the district court to articulate a "factual basis" to support a serious violent offender designation). We further conclude that the facts supporting three of the CSP III counts were insufficiently distinct to avoid a violation of double jeopardy protections, and we therefore remand for the district court to vacate two of those convictions. Otherwise, we affirm.

## DISCUSSION

**{3}** Because this is a memorandum opinion that is prepared for the benefit of the parties, we discuss the facts as they become pertinent to our analysis. We address Defendant's four remaining arguments in turn.

## I. Double Jeopardy

**{4}** Defendant argues that four groups of CSP III punishments violate the federal and state constitutional protections against double jeopardy: (1) Counts 2 and 3; (2) Counts 7 and 8; (3) Counts 4, 5, 6, and 9; and (4) Counts 6, 7, and 9. Defendant's arguments involve multiple punishments imposed for violations of the same statute prohibiting CSP III, and so we first consider de novo whether the Legislature has defined a unit of prosecution that authorizes multiple punishments for the same conduct and if not, whether each of Defendant's acts "are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *See State v. Phillips*, 2024-NMSC-009, ¶ 12, 548 P.3d 51 (internal quotation marks and citation omitted); *see also id.* ¶¶ 9, 11 (describing the two-part test for "unit of prosecution" challenges). As to the first inquiry, the criminal sexual penetration statute does not define a unit of prosecution. *Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624. We therefore move on to the second part of the analysis, and consider whether Defendant's acts were sufficiently distinct, "based on the elements of the offense and any policy underlying the specific statute" and applying what are colloquially called the *Herron* factors: temporal proximity, location of the victim, intervening events, sequencing, the defendant's intent, and the number of victims. *Phillips*, 2024-NMSC-009, ¶ 12 (internal quotation marks and citation omitted). To determine whether Defendant's acts "can be distinguished as discrete violations of" the CSP III statute, *see State v. Benally*, 2021-NMSC-027, ¶ 18, 493 P.3d 366, we apply the *Herron* factors to the multiple CSP III convictions, beginning

with the facts that formed the basis for Counts 2 and 3, *see Phillips*, 2024-NMSC-009, ¶ 14.

**{5}** Defendant's conduct underlying Counts 2 and 3 is "better characterized as one unitary act," rather than "multiple, distinct acts," *see id.* ¶ 13, because the acts occurred close in time, in the same location, with the same victim, and with no intervening event, *see State v. Ervin*, 2008-NMCA-016, ¶ 46, 143 N.M. 493, 177 P.3d 1067 (considering the *Herron* factors and concluding that the defendant's conduct "was one continuous course of conduct, not capable of being split into three charges merely because [the d]efendant touched three different body parts"). At trial, Victim testified that in the bathroom, Defendant grabbed her from the back and wanted to have sex. Victim explained, "I was . . . facing the mirror. He came from the back and he penetrated me. I told him that I didn't want to."[1] Victim turned to the front and tried to "remove" herself. She refused again, but she testified, "Anyway, he kept on going." The State argues that Victim's second refusal and repositioning sufficiently establishes two separate penetrations by Defendant and supports distinct counts. It is not clear, however, from Victim's testimony how long either instance lasted, when she refused, or whether Defendant repositioned Victim—which may demonstrate intent to commit a separate act—or whether Victim simply turned and Defendant continued the act he was already performing. *See Herron*, 1991-NMSC-012, ¶ 18 (noting that inferences that "readily" support both separate and simultaneous acts "tend[] to prove neither"). The acts occurred in immediate sequence, in the same room, without any evidence of significant intervening events, and involved the same orifice and the same object. As a result, Counts 2 and 3 cannot be "distinguished as discrete violations" of the CSP III statute. *See Benally*, 2021-NMSC-027, ¶ 18.

**{6}** For Counts 7 and 8, the *Herron* factors support discrete violations of the CSP III statute, because "penetrations of separate orifices with the same object" establishes distinct crimes. *See Herron*, 1991-NMSC-012, ¶ 15. While no testimony establishes whether these two events were separated by time or intervening events, Victim's testimony that Defendant used fingers to penetrate Victim's anus and vagina sufficiently distinguishes the acts. *See id.* (noting that generally no *Herron* factor alone suffices, "[e]xcept for penetrations of separate orifices with the same object"); *State v. Wilson*, 1993-NMCA-074, ¶ 9, 117 N.M. 11, 868 P.2d 656 ("Under *Herron,* penetrations of separate orifices with the same object constitute separate offenses."). Defendant also argues, however, that Count 7 cannot be distinguished from Counts 6 and 9. We reserve that discussion to first consider whether the remaining counts, which include Counts 6 and 9, are sufficiently distinct.

**{7}** The *Herron* factors support separate violations of the CSP III statute for the remaining counts that Defendant challenged. We discuss these counts and the conduct underlying them in the order that they happened in time, as follows: fellatio (Count 4), penetration (Count 6), cunnilingus (Count 5), and penetration (Count 9). Though each of these four acts were close in time, in the same room, and involved the same victim, Victim's testimony establishes sufficiently distinct acts. Defendant placed himself on top

---

[1] Victim testified at trial through a translator.

of Victim, facing her, and tried to force Victim to perform oral sex by putting his penis on her face, which was the basis for fellatio as alleged in Count 4. *See* § 30-9-11(A). Victim resisted and Defendant then laid Victim "on the bed, . . . grabbed [her] with his arms," and penetrated her vaginally. According to the second, third, and fifth *Herron* factors, these acts distinguish the fellatio in Count 4 from the penetration in Count 6, which was the next sequential act. *See Herron*, 1991-NMSC-012, ¶ 15 (listing location, intervening event, and intent). After the vaginal penetration that formed the basis for Count 6, Victim described verbally resisting, crying, and trying to get Defendant to calm down, but Defendant "wouldn't listen." Defendant then "opened" Victim's legs and began "biting" her "private parts." Victim tried to remove his head with her hands, but Defendant continued and performed oral sex, which was the basis for Count 5. Again, Victim specifically described acts of resistance and Defendant's repositioning and acts of biting were intervening acts, distinguishing the cunnilingus, Count 5, from the previous act, the penetration represented by Count 6. *See id.* Defendant next "twisted" Victim's legs so that she was bending over, hit her on the back so that she would place herself "in the position that he wanted," and had sex with her again. Defendant's act of moving Victim's body into the position that he wanted and engaging again in vaginal penetration, the basis for Count 9, separating Count 5 from Count 9. We further observe that Section 30-9-11(A) differentiates between acts of sexual intercourse, fellatio, and cunnilingus and "serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses." *Herron*, 1991-NMSC-012, ¶ 15. For these reasons, the conduct underlying Counts 4, 6, 5, and 9 were sufficiently distinct under *Herron* as to permit multiple punishments without violating double jeopardy.

{8}     We return then to the question whether Count 7 is sufficiently distinct from Counts 6 and 9. Defendant argues that testimony did not distinguish the act of vaginal digital penetration (Count 7) from the other two acts of vaginal penetration that occurred in the bedroom on her back (Count 6) and from behind (Count 9). The State assumes that the digital penetration occurred in the same sequence as Victim's testimony—from Count 6, to Count 5, to Count 9, to Counts 7 and 8. At trial, Victim testified that after the facts that form the basis for Count 9, Defendant "said he was going to do anal sex" and Victim tried to get away. The State asked, did Defendant "ever insert anything into your anus?" Victim responded, "The fingers. As well as in the vagina." This is the extent of Victim's testimony as to Count 7 and 8 (anal digital penetration). Even if this trial record permits the inference that Count 8 occurred after Count 9 in sequence, Victim did not testify as to when the digital vaginal penetration forming the basis for Count 6 occurred, the location or position of Victim, or Defendant's intent. *See id.* We therefore conclude that the testimony does not permit an inference of distinct conduct forming the basis for Count 7. *See id.* ¶ 13 (declining to hold as a matter of law "that digital penetration of the vagina followed immediately by penile penetration of the same orifice constitutes two punishable acts" because a reasonable mind could equally infer separate acts or "a single assault based on the inference of two penetrations inspired by a single criminal intent"); *see also id.* ¶¶ 18-21 (holding that the evidence did not support inferences that many of the penetrations were distinct); *cf. State v. Pisio*, 1994-NMCA-152, ¶ 34, 119 N.M. 252, 889 P.2d 860 (concluding that sufficient evidence supported "a determination

that the conduct underlying th[e] counts is not unitary"). Count 7 must therefore be vacated.

## II.     Prosecutorial Misconduct

**{9}**     Defendant contends that in closing argument, the State improperly vouched for Victim, commented on Defendant's silence, and misstated the evidence, and that these cumulative errors justify a new trial. To determine whether the State's closing argument requires reversal of Defendant's convictions, we consider: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. To apply the *Sosa* factors, each of the challenged statements "must be evaluated objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.*

**{10}**     Defendant acknowledges that he objected only to the prosecutor's alleged misstatement about the evidence and that the two other issues were unpreserved. "Where error is preserved at trial, an appellate court will review under an abuse of discretion standard." *Id.* On the other hand, "[w]here counsel fails to object, the appellate court is limited to a fundamental error review." *Id.* Fundamental error arises from prosecutorial misconduct "when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Paiz*, 2006-NMCA-144, ¶ 53, 140 N.M. 815, 149 P.3d 579 (internal quotation marks and citation omitted). We consider each of Defendant's arguments in turn.

### A.     Vouching for Victim

**{11}**     First, Defendant contends that the State repeatedly vouched for Victim based on evidence the jury did not hear because the State argued that (1) the investigating officer received information from multiple sources that was consistent with Victim's report, when the officer spoke with only two other people; and (2) reports from various sources, including a third party who did not testify, were consistent with the State's interview with Victim, which Defendant now argues lent the State's credibility to Victim. For these reasons, Defendant maintains that "[t]he comments by the [State] . . . purposely suggested additional evidence, beyond that presented at trial, established that [Victim] was telling the truth and [Defendant] was guilty." *See State v. Pennington*, 1993-NMCA-037, ¶ 27, 115 N.M. 372, 851 P.2d 494 (explaining that the state may not vouch for the credibility of a witness "by invoking the authority and prestige of the prosecutor's office or by suggesting the prosecutor's special knowledge" or by "lead[ing] a jury to rest its decision on the prosecutor's personal integrity or authority and not on the evidence presented"). Defendant did not object to these portions of the State's closing, and so we review the issue for fundamental error. As we explain, no error arose from the State's references to "multiple sources" or consistent statements.

**{12}** The State's reference in closing to "multiple sources" did not suggest that the State knew of other evidence that had not been presented to the jury. *See Pennington*, 1993-NMCA-037, ¶ 27. The State argued: "You also got to hear from the sergeant . . . who investigated this, that he took information from multiple sources and determined that everything that [Victim] told him was consistent with everything else that he had learned." The jury heard the testimony of the investigating officer, who stated that Victim's statement to him was consistent with the report she made to the officer who took the initial statement and with the report Victim made to the sexual assault nurse examiner (SANE). We see little reason to assume that, after hearing evidence that the investigating officer aligned Victim's report to him with Victim's reports to two other people, the jury believed that based on the State's closing argument, the investigating officer spoke with additional unidentified sources. The State encouraged the jury to rely on the evidence presented at trial, and not the prosecutor's credibility, prestige, or special knowledge, *id.*, so the State's reference to "multiple sources" was therefore not improper.

**{13}** The State's reference to its own investigation in closing did not create reversible or fundamental error, because Defendant identified no constitutional protection invaded by the State's comment, it was not pervasive, and Defendant invited the State's response. *See Sosa*, 2009-NMSC-056, ¶ 26; *State v. Smith*, 2001-NMSC-004, ¶ 40, 130 N.M. 117, 19 P.3d 254 (concluding that no error occurred when comments were in response to the defendant's argument). Defendant refers to three portions of the State's argument, beginning with the following:

> Her story has never ever waved. I picked this case up towards the end. There's been a couple other prosecutors on this case. I read that police report, I listened to whatever there was. I interviewed her just to make sure that what was written in these reports from the SANE nurse and from the police officer was exactly what she told me and she never looked at a report, she never looked at a diary.

Defendant also points to the italicized portion of a statement that the State made a few minutes later: "*Her story is consistent from the moment she told it to the lady at the food wagon.* She left work early. She went to get her SANE exam. Same story to . . . the SANE nurse, and the next day to the police officer. The very same story." And last, Defendant challenges the italicized words from the following statement: "I'm not gonna ask you for the lesser included because I *truly believe* that the story that she told you is consistent with the SANE nurse, consistent, same story with the police officer, no changes whatsoever, that you can find this Defendant guilty on all ten counts as they stand." In the context of the full statements, the State argued to the jury that Victim's testimony was consistent based on the evidence that had been presented. That story began with disclosing to the lady at the food wagon—not what Victim told the lady at the food wagon—and the content of the story was consistent with the reports to law enforcement and the SANE.

**{14}** To the extent the State referred to its own interview with Victim, which was not in evidence, Defendant's closing argument opened the door to the prosecutor's comment. *See Pennington*, 1993-NMCA-037, ¶ 28 ("New Mexico recognizes the 'invited-response' doctrine under which defense counsel's closing argument may 'open the door' to comments by the [state] that otherwise would be reversible error."). In closing, Defendant argued as follows:

> Once somebody makes a report, the State is the one who determines whether to go forward. I don't know what happened. I don't know what was going through her head, but the State is the one pushing this case forward. This happened, I think—was it [20]18—three and a half years ago. She's had to relive it several times after talking with the [S]tate, after talking with the witness advocate, after talking—going over her testimony and anticipating what somebody like me is going to ask her. I honestly believe that she believes it happens—the way they said it happened, but that doesn't mean it happened the way she said it happened on court.

With this argument, Defendant suggested that the State pushed the case forward based on Victim's report but Victim's trial testimony was shaped by the interactions with the State. In response, the State explained that Victim's testimony was consistent from the beginning—including in the prosecutor's interview with the State. As a result, the comment was invited by Defendant and therefore does not constitute error. *See Smith*, 2001-NMSC-004, ¶ 40 (concluding that the state's comment in closing "on what [the d]efendant had already invited" created no error).

## B.    Comment on Defendant's Silence

**{15}** Second, Defendant contends that the State improperly commented on silence and invited the jury to draw an adverse inference from Defendant's decision not to testify. Defendant points to the italicized portion of the following assertion by the State:

> And she left him after that. She didn't go running back. His truth—this Defendant's truth is that he's got a temper and he got something in his head that was totally wrong. Totally wrong. And what did he say? Just before [Victim] starts to put on her clothes and leave? Remember what [Victim] said? "Oh my God, he told me he was wrong." *Did he ever say he was sorry? Did he ever show an ounce of remorse? No. Let me tell you what he did. Well, she was on the—on the stand—while she was on the stand crying, telling you her truth. He puts his head down and starts laughing.* I don't know if you guys could have seen that but I was blown away.

The district court then interrupted the State and admonished, "Do not make reference—we'll declare a mistrial." The State responded, "Yes, your honor" and continued: "He has no real remorse, ladies and gentlemen. He has no real conscience. He believes that he could do as he wishes to his girlfriend. Or with any woman, maybe, I don't know."

Together with the State's references to Victim's "truth" as opposed to Defendant's "truth," Defendant maintains that these comments referring to courtroom demeanor invoke evidence outside the record, call the jury's attention to Defendant's decision not to testify, and inflame the jury's prejudices. The State separates the comment related to Defendant's courtroom demeanor from the comments related to remorse, and we too, consider these comments separately.

**{16}**  We agree with the State's concession that the comment related to courtroom demeanor invaded a constitutional protection—the right to remain silent—but we also agree with the State's contention that under these circumstances, the district court's intervention and admonishment prevented fundamental error. *See State v. Torres*, 2012-NMSC-016, ¶ 10, 279 P.3d 740 (emphasizing that the three factors for analyzing prosecutorial misconduct are "meant to be 'useful guides' and that context is paramount"). The district court's intervention in the present case is in stark contrast to the district court's tacit approval of the State's improper statements in *State v. Sena*, 2020-NMSC-011, 470 P.3d 227. In *Sena*, the state made a similar argument to the jury in closing regarding the defendant's demeanor during the victim's testimony. *Id.* ¶ 20. The defendant objected but the district court overruled the objection, "which placed the stamp of judicial approval on the improper argument, further magnifying the prejudice." *Id.* (internal quotation marks omitted). Our Supreme Court determined that the district court's ruling permitted the state to take "advantage of the ruling and repeat[] and embellish[ the] improper argument, giving it additional emphasis." *Id.* ¶ 27. In the present case, the district court did not wait for an objection from Defendant but instead, immediately cut off the State's references to courtroom demeanor. Unlike in *Sena*, the district court did not "solemnize[] the silence of the accused into evidence against him." *Id.* (internal quotation marks and citation omitted). The district court issued a swift, stern, clear rebuke, even without any objection from Defendant. In these circumstances, the State's "highly improper" comment, *id.* ¶ 25, was brief, isolated, and corrected—the State immediately moved on from discussing Defendant's courtroom demeanor. Accordingly, we discern no fundamental error. *See Sosa*, 2009-NMSC-056, ¶ 35 ("To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." (internal quotation marks and citation omitted)).

**{17}**  Turning to the State's comments on Defendant's lack of remorse, in context, the statements related to the evidence at trial and not Defendant's courtroom demeanor and, therefore, did not implicate a constitutional protection. Immediately before the challenged statements, the State referred to Defendant's evidence that Victim returned to the relationship after the incident and Victim's testimony that on the night of the incident, Defendant said that he "was in the wrong" but did not apologize. The State then detoured to mention Defendant's courtroom demeanor and after correction by the district court, returned to discuss Defendant's lack of remorse. While Defendant ties the statements about remorse to the State's comments about courtroom demeanor, our focus is not on Defendant's understanding of the comments on appeal, but "what the jury understood the comment[s] to mean." *See id.* ¶ 20. With the remorse comments

coming before and after the courtroom demeanor statement, which drew such a strong reaction from the district court, if the remorse comments related to demeanor, we would expect either Defendant to have objected or the district court to have intervened. *Id.* ¶¶ 20-21 (noting that these real-time responses are relevant for an appellate court to interpret the challenged remarks). The State's comments on Defendant's remorse appear to relate to lack of remorse on the evening of the incident—not that he showed no remorse in the courtroom. *See State v. Armendarez*, 1992-NMSC-012, ¶ 10, 113 N.M. 335, 825 P.2d 1245 ("We review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury."). In these circumstances, "we cannot say as a matter of law that the probability" that the jury interpreted the State's comments in the manner suggested by Defendant "is so great that a miscarriage of justice will result without our intervention." *See Sosa*, 2009-NMSC-056, ¶ 41. As a result, we do not view the statements about remorse as a comment on silence that invades a constitutional protection.

**{18}** The second and third *Sosa* factors, balanced with the first, do not establish fundamental error arising from the remorse comments, when the statements are viewed "objectively in the context of the [state's] broader argument and the trial as a whole." *Id.* ¶ 26. The comments on lack of remorse were repeated twice and this section of the argument was approximately one minute, including the district court's intervention, within a thirteen-minute rebuttal. *See id.* (considering second "whether the statement [was] isolated and brief"). The State makes no argument that these comments were invited by Defendant. *See id.* (considering third whether the comments were "invited by the defense"). These factors inform the analysis little under these circumstances. But as we explain, viewing the testimony and the State's comments in closing as a whole, we are not persuaded that the remorse comments constitute error. *See id.* (considering the entire context and "the trial as a whole").

**{19}** The State's argument about remorse was based on Victim's testimony about Defendant's statements and behavior during the assault and was used to show consciousness of guilt. Victim testified that the argument leading up to the charged acts involved Defendant's anger arising from suspicion that Victim had been with other men, and that during the assault Victim told Defendant that she did not want to be intimate "because of the words and insults" that he had said to her. Victim testified that Defendant twice told her that "if [she] wanted to behave like a loose woman," she needed to participate in sexual acts with him. Victim told Defendant "a lot" that she wanted him to stop, but he did not listen. Victim testified that Defendant had been like this "one time before," but this time was different because, "[h]e wouldn't listen, he didn't care, he didn't care if I was crying and the hurt what I was feeling during those moments." At one point, Defendant told her that "he was in the wrong" and that "he needed help." Victim's testimony supports that on the night of the assault, Defendant was angry with Victim about perceived infidelity, knew that Victim did not consent to sexual relations, knew what he was doing was wrong, and continued regardless.

**{20}** The State's comments on rebuttal tied this evidence to its argument that Defendant never said he was sorry, he had "no real remorse" or conscience, and that he "believe[d] that he could do as he wish[ed] with" Victim or "with any woman." Our Supreme Court has explained that

> [c]losing argument is unique. Coming at the end of trial, and often after jury instructions, it is the last thing the jury hears before retiring to deliberate, and therefore has considerable potential to influence how the jury weighs the evidence. At the same time, closing argument, and rebuttal argument in particular, is necessarily responsive and extemporaneous, not always capable of the precision that goes into prepared remarks.

*Id.* ¶ 24. The State's rebuttal argument referring to remorse was tied to the evidence at trial and invaded no constitutional protection. For these reasons, the balance of factors and evidence presented favors a conclusion that the statements do not require reversal. *See id.* ¶ 34 (noting that in cases finding reversible error, the "common thread" is that "the prosecutor's comments materially altered the trial or likely confused the jury by distorting the evidence").

## C.   Misstated Evidence

**{21}** Defendant also contends that the State misstated the SANE testimony in two respects. First, the State told the jury in closing that the SANE testified that there were fingerprint marks and bite marks on Victim's thighs. The SANE, however, did not testify about bite marks on Victim's thighs. Defendant did not object to this misstatement, which we view as an unintentional mistake by the State because in other portions of closing the State more closely recited the SANE's testimony about the location of the bite marks. The district court instructed the jury that "what is said in the arguments is not evidence." *See State v. Benally*, 2001-NMSC-033, ¶ 21, 131 N.M. 258, 34 P.3d 1134 ("We presume that the jury followed the instructions given by the trial court, not the arguments presented by counsel."). Under these circumstances, the State's mistake did not "prejudice [D]efendant enough to deprive him of a fair trial." *See State v. Gavin*, 2005-NMCA-107, ¶ 29, 138 N.M. 164, 117 P.3d 970. Nevertheless, because the State had "a duty not to misstate the facts," what we view as "a careless mistake can be an ingredient in a cumulative error analysis." *See id.* We therefore "reserve this instance of misconduct as one to consider among the other instances of claimed prosecutorial misconduct that may add up to cumulative error." *See id.*

**{22}** Second, Defendant argues the district court incorrectly overruled Defendant's objection to the State's assertion that the SANE testified that the injuries she observed were consistent with Victim's story. The SANE did not testify directly that the injuries were consistent with Victim's report. Generally, the SANE's testimony about the observed injuries was consistent with Victim's testimony. Even though the SANE described some different locations for bite marks than Victim reported having been bitten, both witnesses testified about biting and bruising. The State maintains that the

SANE's testimony about the injuries she observed "is obviously physical evidence tending to corroborate [V]ictim's version of events." We agree with the State. As we have noted, the State "is allowed reasonable latitude in closing argument, and the [district] court enjoys a wide discretion in dealing with and controlling closing argument." *State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64. The district court therefore did not abuse its discretion in overruling Defendant's objection to the State's argument. *See id.*

## D.      Cumulative Error

**{23}**    Defendant additionally contends that the individual errors that he identified cumulatively compromised the fairness of the trial and require reversal. The doctrine of cumulative error "requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. We apply the doctrine strictly, and it "cannot be invoked if no irregularities occurred or if the record as a whole demonstrates that a defendant received a fair trial." *Id.* (citation omitted). Defendant has asserted numerous points of error arising from the State's closing arguments, but we have found no error for all but two: the comment on Defendant's courtroom demeanor and the misstatement of the evidence about the location of the bite marks. Having considered these two asserted errors individually, we further conclude they do not rise to the level of fundamental error in the aggregate. *See State v. Allen*, 2000-NMSC-002, ¶ 96, 128 N.M. 482, 994 P.2d 728 (concluding that "the alleged instances of prosecutorial misconduct in this case do not rise to the level of fundamental error regardless of whether they are considered individually or cumulatively"). The errors were unrelated to each other. The State's misstatement about the location of the bite marks in closing was not exacerbated by the erroneous reference to Defendant's courtroom demeanor in rebuttal. The two unrelated and isolated errors in this context do not aggregate to create fundamental error where none before existed because as a whole, Defendant has not demonstrated that the trial was unfair. *See Martin*, 1984-NMSC-077, ¶ 17.

## III.      Sufficiency of the Evidence

**{24}**    Defendant challenges the evidence supporting the convictions Count 4 (CSP III (fellatio)) and Count 1 (first degree kidnapping). Applying our deferential standard of review to the evidence presented at trial and the jury's verdict, we conclude that the evidence supported both the CSP III and kidnapping convictions. *See Garvin*, 2005-NMCA-107, ¶ 5 (viewing "the evidence in the light most favorable to the verdict, resolving all conflicts in the evidence and indulging all permissible inferences to be drawn from it in favor of upholding the verdict" and declining to "weigh the evidence" or "substitute our judgment for that of the jury so long as there is sufficient evidence to support the verdict").

**{25}**    The evidence and reasonable inferences therefrom support the CSP III (fellatio) conviction. The jury instruction defines "fellatio" as "the touching of the penis with the

lips or tongue." *See State v. Duttle*, 2017-NMCA-001, ¶ 18, 387 P.3d 885 (explaining that "the jury instructions are the law of the case against which the sufficiency of the evidence supporting the jury's verdict is to be measured"). Defendant contends that Victim's testimony established only that Defendant's penis "was on her face, but she did not mention her lips or tongue touching it." Defendant contends that the "only evidence" that Defendant forced Victim to perform fellatio was through the State's question, "He's having you perform oral sex?" and Victim's answer, "Yes." We disagree. Victim testified that Defendant wanted her "to perform oral sex," and he placed himself on top of her. Victim told the jury, that Defendant's penis was "on my face." From this, the jury could reasonably infer that Defendant's penis touched Victim's lips or tongue.

**{26}** The evidence additionally supported the kidnapping conviction. The kidnapping jury instruction had five elements, but Defendant focuses the appellate challenge on element three, that "[t]he taking or restraint or confinement of [Victim] was not slight, inconsequential, or merely incidental to the commission of another crime." Defendant argues that the evidence of restraint was the same evidence "involved in the sexual assaults and battery allegations." It is well established that our "Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." *State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238. We determine whether restraint is incidental to the commission of another crime based on "the facts of each case, in light of the totality of surrounding circumstances." *Id.* ¶ 43 (internal quotation marks and citation omitted). In the present case, the State argued to the jury that the restraint was not incidental to the other crimes based on Victim's testimony. Defendant held Victim down by the neck and throat and did not allow her to leave the house, "and then [she was] violated repeatedly." This refers to Victim's testimony that she and Defendant argued when she first arrived at his home and when she tried to leave, he stopped her. Defendant stood by the door so that Victim could not get out and then grabbed her by the neck and put her on the sofa. After that, Defendant told her to take a shower with the shower curtain open, which she did, while Defendant waited in the bathroom, and the first charged sexual assault occurred in the bathroom after the shower. The acts of restraint in the living room were not incidental to any of the crimes that took place after Victim's shower. Any restraint that was incidental to the sexual assaults "was separate and distinct from the restraint [the d]efendant used to complete the kidnapping." *See Sena*, 2020-NMSC-011, ¶ 39. As a result, the evidence of restraint that was not incidental to another crime was sufficient to support Defendant's conviction for kidnapping.

## IV. Presentence Confinement Credit

**{27}** Defendant maintains that the district court improperly calculated presentence confinement credit. The State acknowledges a potential miscalculation but responds that the matter should be reserved for habeas review. To that, Defendant asserts that presentence confinement credit is a statutory entitlement and habeas review is not appropriate. We need not resolve the dispute. The entry of an amended judgment will be necessary, based on our remand on other issues. The calculation of presentence confinement credit can and should be addressed at that time. *See State v. French*,

2021-NMCA-052, ¶ 9, 495 P.3d 1198 (outlining the district court's nondiscretionary obligation to award credit for presentence confinement that meets the well-established criteria).

**CONCLUSION**

**{28}** We reverse and remand for the district court (1) to vacate Defendant's conviction of either Counts 2 or 3 as well as Count 7, *see State v. Begaye*, 2023-NMSC-015, ¶ 36, 533 P.3d 1057 ("When both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court." (internal quotation marks and citation omitted)); (2) to address the discrepancy related to the serious violent offender designations; (3) to address the recalculation of presentence confinement credit; and (4) to resentence Defendant and enter an amended judgment. Otherwise, we affirm.

**{29}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**